## ARGUED AND DETERMINED

### IN THE

# COURT OF COMMON PLEAS

#### FOR THE

## CITY AND COUNTY OF NEW YORK.

---

### GARRET M. MAYBEE *v.* JOHN SNIFFEN. (*a*)

An alteration in the date of a general release, which purports to discharge the relessee from all claims and demands "to the day of the date," is a *material alteration;* and when made by the relessee after execution by the relessor, and without his authority or assent, it would avoid the release.

The authorities are divided upon the question whether, when a material alteration appears upon the face of the instrument, it is to be *presumed,* in the absence of explanation, to have been made *before* or *after* the execution and delivery.

*It seems,* upon a review of adjudged cases, that the best rule, and the one most in accordance with the judicial decisions of the state of New York, is, that the instrument, with all the circumstances of its history—its nature—the appearance of the alteration—the possible motives to or against making it—and its effect upon the parties respectively, ought to be submitted to the

---

(*a*) This decision, and those following under dates prior to January, 1853, are part of a number, rendered from 1850 to 1854, lost or mislaid when the records of the Common Pleas, with those of the Supreme Court and of the county, were kept in one office. After the publication of the first volume, a few of these cases were found on file, and others were reproduced by means of such drafts or copies as had been preserved.

jury; and that *the court* cannot presume that the alteration was made after the signing, from the mere fact that it appears on the face of the instrument, whether under seal or otherwise.

In bar of a recovery on a money demand, a release was produced, which appeared, on inspection, to have had its date altered by the obliteration of the word "March" and the substitution of "May." There was some evidence that other relessors had executed the instrument before the plaintiff, and that they signed it after the day of the date as altered. It was not alleged that any claims had accrued to the plaintiff from the defendant between the two dates, to constitute a motive for the change. *Held,* that there was no error in the decision of referees, admitting the release in evidence.

Under such a state of facts, the question whether the instrument had been vitiated by a fraudulent alteration, is a question of fact for a jury or referees.

Where the plaintiff claims that a release has been altered after its execution by him, an exception, on the ground of irrelevancy, to the admission of testimony showing the time of such execution, is clearly untenable.

The fact that an instrument was actually executed at the time indicated by the date substituted for the original date, explains the alteration, and renders the instrument admissible in evidence.

Evidence that another creditor of the defendant was induced, by his fraudulent representations, to execute a release without knowing the nature of the instrument which he was thus solicited to sign, was held incompetent to sustain a charge that the same fraud was practiced upon the plaintiff by an agent of the defendant, no pretence being made that the former had acted under the influence or with a knowledge of the fraudulent representations, or knew that such other creditor had signed a release.

In an action of debt, it appeared that the plaintiff and other creditors of the defendant had united with him in petitioning for his discharge as an insolvent, as authorized by the statute on the application of an insolvent and of his creditors, to the amount of two thirds of all his indebtedness. In compliance with the statute, *the plaintiff* annexed to the petition his own affidavit that the defendant was indebted to him in the sum for which he now brought suit. Before the petition was presented, the plaintiff executed to the defendant a full release of all claims, but did not withdraw his name from such petition, nor require the return of his affidavit. The same were, therefore, afterwards presented to a judge by the defendant, who thereupon made oath before him, that the account of his creditors, therewith delivered, and which included the plaintiff's name, was in all respects just and true. The insolvent discharge, for reasons not disclosed, was refused. *Held,* that the defendant's oath did not operate, as between him and the plaintiff, as an *estoppel in pais,* or otherwise, to prevent him from insisting upon the release as a defence, and that there was no error in receiving the release in evidence and considering it with the other testimony in the cause.

*Held,* further, that the defendant was not estopped to set up the release, as a defence to the plaintiff's claim, by any rule founded upon *public policy,* nor by reason of the *fraud* attempted by him: such fraud, if any, having been

Maybee *v.* Sniffen.

participated in by both parties, ought rather to be disregarded altogether, in determining their mutual rights.

An admission acted upon *alone* by the party making it, is not conclusive upon him. It must have been acted upon by *others*, whose rights have been affected by a reliance upon its truth, and who would be prejudiced in consequence of the admission, if the party were suffered to deny that it is conclusive.

The integrity of judicial proceedings forbids that a party *to a record* should be permitted to impeach the verity of what he has himself made the foundation of its validity. He will not be allowed to deny the facts alleged by him in a judicial proceeding, (which facts have been acted upon by others, through his procurement,) so as to impeach their claims founded thereon.

Therefore, in any matter growing out of an insolvent assignment and discharge, obtained in reliance on the affidavit of the debtor, he would not be permitted to deny the truth of such affidavit.

And accordingly, where an insolvent debtor obtains a judicial discharge under his petition and affidavit, supported by the petition and affidavit of a creditor, neither of them can be permitted, as against the trustees to be appointed, or other parties to that proceeding, to deny the truth of their respective affidavits, so as to affect the regularity or integrity of the proceeding.

But *every* proceeding in court, or every affidavit made by a party to a judicial proceeding, does not necessarily conclude him in a matter not connected therewith nor founded thereon.

*It seems,* that the fact that an admission is sworn to, is not, *in itself,* essential in determining whether it concludes the party making it.

The doctrine of *estoppel in pais* should be carefully guarded and properly limited in its application.

*It seems,* that in cases connected with the administration of public justice and of government, the rule respecting admissions is more strictly construed; and they are often held conclusive on grounds of public policy, and from the jealousy with which frauds upon the state itself are guarded against, and the rigor with which the revenue laws are protected.

An objection that a witness has already answered the same question, or that the subject thereof is exhausted, is addressed to the discretion of a court or referees.

THIS suit was brought to recover $2,755 40 and interest, for lumber delivered by the plaintiff to the defendant, and used in the construction of the Church of the Puritans, in the city of New York. The indebtedness was contracted in and before December, 1846.

It was claimed by the defendant, that the plaintiff's demand had been satisfied by the assignment to him of the defendant's contract for building the church; and a set off

was pleaded, for certain services alleged to have been performed for the plaintiff. But the defence mainly relied upon, was a general release executed by the plaintiff, in the usual form, purporting to discharge the relessee from all demands from the beginning of the world to the day of the date.

It was evident, upon the face of this instrument, that its date had been altered by the obliteration of the word "March" and the substitution of "May." It appeared, however, that other creditors of the defendant executed the same release in the latter part of May, some of whom testified that they signed it before the plaintiff's signature was added.

There was no allegation that any debt had been incurred by the defendant to the plaintiff, subsequently to the date as originally written.

The cause was tried by referees, who admitted the release in evidence, and reported in favor of the defendant.

The plaintiff alleged that he had been induced, by an agent of the defendant, to execute the release without examination, considering it a part of the defendant's proceedings in insolvency; and that the defendant had fraudulently misrepresented the value of the contract assigned by him to the plaintiff, as before mentioned.

As a part of the testimony to sustain these charges, a creditor of the defendant was called, with a view of showing that his execution of a release was obtained by the defendant, personally, by a similar fraud. This testimony was rejected.

The agent of the defendant was examined as a witness, and was asked by the defendant's counsel whether he did not obtain the signatures to releases after the affidavits used by the defendant, in his insolvent proceedings, were made. This and similar questions were objected to as irrelevant. Upon the assertion of the witness that he had no recollection on the subject, a question of the same kind was repeated, and was objected to on the further ground, that an answer

had already been given. The questions were all, however, allowed, and finally elicited from the witness a statement of his impression that he *had* obtained the execution of releases by some of the creditors after they had sworn to affidavits.

To the several rulings of the referees exceptions were taken by the plaintiff's counsel; but the main ground relied upon to sustain the motion for a new trial, was that the release should have been excluded by reason of the alteration; that the defendant, by his own acts, was estopped to set it up; and that his affidavit of the truth of .the schedule attached to a petition for his discharge as an insolvent, and containing the plaintiff's name in the list of creditors,—which affidavit was made subsequently to the date of the release,—was conclusive evidence of his indebtedness.

The facts relating to this objection are fully set forth in the opinion.

*Peter Y. Cutler*, for the plaintiff.

*D. T. Walden, Jr.*, and *Theo. E. Tomlinson*, for the defendant.

BY THE COURT. WOODRUFF, J.—Several questions were raised on the trial before the referees as to the admission and rejection of evidence, and exceptions were entered to their ruling. But counsel for the plaintiff, on the argument of this motion, confined themselves to two questions only, and no doubt intended to rest their motion upon those alone.

It is proper, however, to say, that upon referring to the questions which were allowed under the plaintiff's exceptions, we cannot find, in the ruling of the referees, any ground for setting aside the report.

The questions were clearly not *irrelevant;* for the *time* when the release was executed was important, in view of the plaintiff's claim that it had been altered after it was signed by him. And the objection that a witness has already answered the same question, or that the subject is exhausted,

is addressed to the discretion of the court, which we cannot say was in this case so exercised as to prejudice the plaintiff.

The rejection of the proof offered to be given by the plaintiff, that the defendant had practiced a fraud upon Collyer, was proper. There was no pretence that the release which he induced Collyer to sign was the release given by the plaintiff, nor that any thing said or done to Collyer influenced the plaintiff, or was even communicated to the plaintiff, or that the plaintiff knew that Collyer had signed a release; and, besides, proving that the defendant had practiced a fraud upon one of his creditors, in no legitimate sense tended to prove that he had also defrauded the plaintiff. There was nothing in the offer, as made, connecting the two releases, (if two were produced by the defendant,) so as to make the defendant's fraudulent substitution of a *release* for a *petition*, to be signed by Collyer, any evidence that the defendant's *agent*, Robins, when *he* procured the release from the plaintiff, practiced a similar fraud upon him.

But the points upon which the plaintiff's counsel rest their motion are,

*First.* That it is apparent, on the face of the release produced by the defendant, that the *date* has been altered, and it ought not, therefore, to have been admitted in evidence.

*Second.* That the defendant having, after the date of the release, made an affidavit as a part of a proceeding to obtain a discharge from his debts as an insolvent, in which affidavit he swears that the schedule of his debts, annexed thereto, is true, cannot now be permitted to show a previous release, by the plaintiff, of one of those debts set down in the schedule, and for the recovery of which this suit is brought.

It was, no doubt, apparent, from an inspection of the release, that the name of the month in the date, which now appears as *May*, was written over the word *March*, which was thereby partially obliterated.

It is also plain that an alteration in the date of a *general* release, which purports to discharge the relessee from all

claims and demands from the beginning of the world to the " *day of* the date," is a *material* alteration. Such an alteration, made by the relessee after execution by the relessor, and without his authority or assent, would avoid the release.

But upon the question whether, when such alteration appears upon the face of the instrument, it is to be *presumed*, in the absence of explanation, to have been made *before* or *after* signing and delivery, the authorities are divided.

In *Rankin* v. *Blackwell*, 2 Johns. Ca. 198, it is said that an alteration appearing on the face of a *note*, unsupported by proof, is alone insufficient to avoid the note.

In *Jackson* v. *Jacoby*, 9 Cow. 125, that an alteration appearing on the face of an instrument in a different ink from the residue, and not *noted* as made at or prior to the signing, is, *perhaps*, sufficient to call for explanations from him who would support it as genuine.

In *Jackson* v. *Osborne*, 2 Wend. 559, it is said, that when nothing appears but the fact of an erasure or interlineation, in a material part of the deed, of which no notice is taken at the time of the execution, it is a suspicious circumstance, which requires some explanation by the party producing it. But the jury are to say whether the explanation is satisfactory. And held, therefore, that a charge to the jury that a party seeking to invalidate a deed for an erasure appearing thereon, must show *affirmatively* that such erasure was improperly made, was erroneous.

In *Smith* v. *McGowen*, 3 Barb. Sup. Ct. Rep. 404, a majority of the court held, that although an alteration appearing on the face, be a suspicious circumstance, requiring explanation, it is not enough to exclude the instrument when offered as evidence. The explanatory evidence might be given afterwards and be entirely satisfactory.

In *Prevost* v. *Gratz*, Pet. C. C. R. 369, and *Morris* v. *Vandam*, 1 Dall. 67, it was held, that the *legal presumption* from an alteration apparent on the face of the instrument is, that it was made *after* the execution.

In *Johnson* v. *The Duke of Marl.* 2 Stark. 278, the plain-

tiff was required to *prove* that an alteration (apparent on the face of the instrument) in the date of a *bill* was made *before* acceptance; otherwise the bill would be deemed void for want of a new stamp. And a like case is found in 8 Adolph. & El. 215, *Knight* v. *Clements.* And see, also, *Downes* v. *Richardson,* 5 Barn. & Adolph. 674; 1 D. & R. 332.

In *Henman* v. *Dickinson,* 5 Bing. 183, in an action also on a bill of exchange, with an alteration in the amount appearing on its face, the court held, that the party producing the bill must show that the alteration was made by consent of parties or before issuing the bill. (2 Moore & Payne, 289.) And in *Clifford* v. *Parker,* 2 Man. & Gr. 909, (3 Scott N. R. 233,) it is said, that when the *date* of a will has been altered, it is the duty of the plaintiff to give some evidence of the circumstances under which the alteration was made.

The like proposition is stated in 3 Carr. & P. 55, *Bishop* v. *Chambers ;* but although the plaintiff gave no account, &c., it is left for the *jury* to say if an alteration was made *after* the completion of the instrument. And in *Doe ex dem. Tathan* v. *Catamon,* 5 Eng. L. & Eq. R. 349, (15 Jur. 728,) the Court of Queen's Bench in England said, that the presumption is, that an erasure or interlineation in a deed was made at the time of the execution of the deed; and that although no evidence was given to show when the alterations were made, it was held that it was a question for the jury, whether the alterations were made before the execution of the deed. (See the authorities collected in a note to this case in the American edition.)

In this country it was held, in *Hills* v. *Berms,* 11 N. Hamp. 395, and in *Humphrey* v. *Guillon,* 13 Ib. 385, that the alteration of a note, apparent on its face, must be *presumed* to have been made after execution and delivery. But it is said, in the first case, that the jury may be *satisfied* in some cases, from an *inspection* of the paper itself, that the alteration was before the signing.

(See, also, to a similar purport, *Commercial and Rail-Road Bank* v. *Lum,* 7 How. Miss. R. 414, and 1 How. 104.)

So, as to the erasure of the name of one of several obligors in a bond; the obligee must account for the alteration. (*Barrington* v. *Bank of Washington*, 14 S. & R. 405.)

But in *Simpson* v. *Stackhouse*, 9 Barr, 186, the court hold, that the *onus* of showing that an alteration in a *negotiable* instrument was lawfully made, is on the holder; but that in *other instruments* it seems the *presumption* is in favor of the validity of the instrument, until the contrary appears.

In *Gooch* v. *Bryant*, 1 Shep. 386, held, that an alteration of a figure in the date of a note, was not, *of itself*, evidence that the alteration was made after execution and delivery; it is a question of evidence to be submitted to the jury.

In *Cumberland Bank* v. *Hall*, 1 Halst. 215, it was held, that the *law* would *not presume* an alteration which is apparent on the face of the instrument to have been made *after* its execution; but that it is a question for the jury.

*Davis* v. *Carlisle*, 6 Ala. 707, is to the same purport.

In *Crabtree* v. *Clark*, 7 Shep. 337, it is said to be a question for the jury, though no explanation is offered. And an instruction by the court that the note is *void*, if the alteration be not accounted for by the plaintiff, is erroneous.

In *Pallen* v. *Shaw*, 3 Dev. 238, it is said, that if an alteration in a bond be *prejudicial* to the obligee, it will be *presumed* to have been made *before* the execution.

And in *Mathews* v. *Coatlin*, 9 Missouri, 705, held, that the law *presumes* an erasure or interlineation to have been made *before* it was signed, *unless* the instrument is *suspicious* on its face. When it is so considered by the court, then *no* presumption arises, but it is left to the jury.

In *Wilson* v. *Henderson*, 9 S. & M. 375, it is held to be a question for the jury, whether the alteration was *before* or *after* delivery; and in determining this fact, they may consider the nature of the alteration, as whether advantageous to the holder or not.

And in *Beeman* v. *Russell*, 20 Verm. R. 205, it was held, that an alteration, if nothing to the contrary appears, should be presumed to have been made at the time of the execution

and delivery; but that generally, the whole inquiry, whether there has been an alteration, and whether in fraud of the other party, to be inferred from the face of the instrument or from other proof, is to be left to the jury. (See, also, *Bailey* v. *Taylor*, 11 Comst. 531.)

In this conflict of opinion, it appears to me that the sensible rule, and the rule most in accordance with the decisions of our own state is, that the instrument, with all the circumstances of its history, its nature, the appearance of the alteration, the possible or probable motives to the alteration or against it, and its effect upon the parties respectively, ought to be submitted to the jury; and that the *court* cannot presume, from the mere fact that an alteration appears on the face of the instrument, (whether under seal or otherwise,) that it was made *after* the signing.

Some alterations may be greatly to the disadvantage of the holder or party setting up the instrument; shall it be *presumed* that *he* made them unlawfully *against* his own *interest?* Others may be *indifferent* as to *him* and favorable to some other. No presumption in such case can exist against him.

In the present case, however, the party setting up the release was not entirely without evidence throwing light on the subject of the alteration. So that whatever might be the presumption, had *nothing* appeared but the *altered date*, there was enough to entitle the release to be received as evidence for the consideration of the referees.

The witness, Robins, testifies, that Mandeville and Field signed the release *before* the plaintiff signed it.

Field testifies that he signed it in the latter part of *May*.

This is evidence that the instrument *now* bears its *true* and *proper* date, *i. e.*, of the time when it was signed, and, consistently with entire fairness, explains the alteration. When to this is added, that in respect to the claims of this plaintiff there was. no motive to *any* alteration, (for whether dated in March or May, the release, if otherwise valid, was alike effectual,) the inquiry became, in every point of view, a proper one for a jury or the referees.

Maybee *v.* Sniffen.

There was, therefore, no error on the part of the referees in receiving the release in evidence, so far as *alteration* was urged as an objection; and having received it, we must conclude, from their report, that they found as a matter of fact, that it had not been vitiated by a fraudulent alteration.

The remaining question is, whether the defendant's affidavit of his indebtedness to the plaintiff, was conclusive upon him, so that he was precluded from setting up the release as a defence.

In or about March, 1847, the plaintiff and other creditors of the defendant united with him in a petition for his discharge from his debts as an insolvent, under the statute authorizing such discharge on the petition of the insolvent, and of creditors to the amount of two thirds of all of his indebtedness. And the plaintiff, in compliance with the statute in that behalf, annexed to the petition an *affidavit* that the defendant was indebted to him in the sum for which this present suit is brought. Before the petition and affidavit were presented to the judge, the plaintiff executed a full release and discharge to the defendant, of all claims and demands, &c., to that date, but did not withdraw his name from the defendant's petition, nor require the defendant to return his affidavit, thus leaving it in the power of the defendant to impose upon the judge and upon other creditors, by representing the petition to be signed by *creditors*, when he had in his pocket the release of several of the very debts named in his schedule; which debts were the subject of computation to make up the two thirds in amount, to give the judge jurisdiction and secure a compulsory discharge from those who had not signed the petition.

And accordingly, with the release from the plaintiff and other creditors in his pocket, the defendant, in July, presented the petition to the judge, and at *that time* made oath before him that the account of his creditors, therewith delivered, was, *in all respects, just and true. This is the oath* upon which the plaintiff now relies to destroy the release, or exclude it from the consideration of the referees. Creditors

appeared and objected to the defendant's discharge, and for some reason, not disclosed by the evidence before us, it was denied.

The plaintiff, having now brought suit for the debt originally due to him, now insists that the defendant's affidavit operates as an *estoppel in pais*, and that he cannot be permitted, by setting up the plaintiff's release, to prove in this action that he swore falsely when he presented his petition as an insolvent, and thus endeavored fraudulently to obtain a discharge.

There are strong reasons for holding this defendant strictly to the presumption that he swore truly when he presented his petition; and regard for the integrity of judicial proceedings forbids, that a party to a record should be permitted to impeach the verity of what he has himself made the foundation of its validity.

We have no hesitation in saying, that in any matter founded upon the proceeding sought to be contradicted, or growing out of the assignment and discharge obtained in reliance upon the affidavit in question, this defendant would not be permitted to deny the truth of the affidavit.

Illustrations of a like character may be found in *Harmer* v. *Davis*, 7 Taunt. 577–8. In an action against the defendant, by the assignees of a bankrupt, it appeared that it was upon the *petition* of the *defendant*, supported by his own affidavit, that the bankrupt owed him £303, that the commission issued. The court held, that it was not *competent* for the defendant to deny that the bankrupt owed him this sum; that the *assignees deriving title* under the commission sued out by the defendant, he could not impeach that title by insisting that in fact the bankrupt owed him nothing, or a sum too small to support the commission.

And in *Watson* v. *Ware, &c.*, 5 Barn. & Cres. 150, a *debtor in custody* obtained his own discharge, upon an application founded upon the fact of his own bankruptcy, and that his detaining creditor had proved the debt under the commission in bankruptcy. It was held that he could not afterwards,

Maybee *v.* Sniffen.

in an action against the assignees, dispute the validity of the commission.

But it by no means follows from this that every proceeding in court, and every affidavit made by a party to a judicial proceeding, concludes him in a matter not connected therewith nor founded thereon.

It was urged that this defendant ought to be concluded by his *attempt at fraud ;* that having, by his falsehood, given the judge apparent jurisdiction of his proceedings as an insolvent, in which he *might* have been successful, he ought not to be permitted to defend *this action* by alleging the fraud, which he virtually does by setting up the present release.

I cannot regard the plaintiff as in this respect in any better position, nor entitled to any more favorable regard. If the defendant attempted a fraud, he had the assistance of the plaintiff. The plaintiff aided him by his petition and his oath. If the petition and the oath were literally true when signed by the plaintiff, they became false the moment the release was signed ; and if there was fraud in the matter, the plaintiff, by suffering the defendant to retain his petition and affidavit after the release was given, was as guilty of the fraud as the defendant himself.

In this aspect the case stands thus : The plaintiff showed a *prima facie* cause of action. The defendant produced a release which, according to its purport, is a complete defence. The plaintiff thereupon avers, that by a *mutual* fraud, attempted to be practiced by the defendant and himself upon the court and other creditors, the defendant is estopped to set up the release as a defence. To this I cannot subscribe. I think, rather, the fraudulent transaction should, as between this plaintiff and defendant, be disregarded altogether, and the plaintiff be left to avoid the release, if he can, upon *other principles.*

There are two grounds upon which it is insisted that this affidavit may operate as an *estoppel in pais*, or as a conclusive admission, not open to contradiction.

*First.* Because it has been acted upon by the defendant, and he has thereby gained an advantage.

*Second.* That it is against public policy to permit a party thus to practice an experiment upon our judicial proceedings, and afterwards deny the facts upon which those proceedings rest.

Many examples under the first named ground and various illustrations of the principle are mentioned in 1 Greenlf. Ev. § 207, but I apprehend the principle is not broad enough to reach the present case.

It is not an admission which has been acted upon by the party making it *alone*, but one acted upon by *others*, who would be prejudiced in consequence, if he were suffered to deny it—that is conclusive.

Mr. Greenleaf says, they are "admissions which have been acted upon by others which are *conclusive* against the party making them, in all cases *between* him and the person *whose* conduct he has thus influenced;" and it may be added, *whose* rights have been affected by a reliance on the truth of the admissions.

And, therefore, had this defendant obtained a discharge under his petition and affidavit, supported by the petition and affidavit of the plaintiff, neither of them could have been permitted, (as already suggested,) as against the trustees to be appointed, or other parties to that proceeding, to deny the truth of their respective affidavits, so as to affect the regularity or integrity of the proceeding.

The general rule governing admissions of this character is stated in the *Welland Canal Co.* v. *Hathaway,* 8 Wend. 483, by Justice Nelson. "A party will be concluded from denying his own acts or admissions, which were expressly designed to influence the conduct of another, and did so influence it, *and* when such denial will operate to the injury of the latter." (See the cases cited.)

This rule is almost in very terms adopted in *Dezell* v. *Odell,* 3 Hill, 219, and the caution to be observed against extending this species of estoppel beyond the strict limits of this rule, is

strongly urged by Justice Bronson, who thought the facts in that case were not within it.

In *Frost* v. *Saratoga Mut. Ins. Co.*, 5 Denio, 154, and in *Truscott* v. *Davis*, 4 Barb. 495, the rule is laid down with the same careful limitations.

In this aspect it makes no difference that the admission is *sworn to.*

In *Nicholls* v. *Downs*, 4 Carr. & Payne, 330, it was said by counsel, that when this objection was urged before Lord Ellenborough, to an action on a bill of exchange, that the plaintiff had not inserted it in his schedule of assets in a proceeding under the insolvent debtor act, his lordship said, "that a man was not to be cheated out of what was really due to him, because he had attempted to cheat his creditors."

In *Ellis* v. *Watson*, 2 Stark. R. 453, the sworn entry by the defendant, at the custom house, that himself and certain others were partners, was held *not to conclude* him, so that he might not prove that he was *not* a copartner, the suit being by a person who had *not acted* upon the *faith* of the entry. It would have been held otherwise in favor of the *government.* (See, also, *Thomas* v. *White*, 1 Tyrr. & Gr. 110.)

It cannot be said that the affidavit now in question was an admission made to the plaintiff to induce him to any act, on his part, or that he has *acted* upon *it*, or in reliance upon the defendant's truthfulness therein, or that by reason of any thing done or suffered by him, founded upon that affidavit, he will suffer injury if the defendant be permitted to deny it.

It is not an estoppel within the cases above mentioned.

Is it against public policy to permit him to deny it?

I have already suggested that a party will not be permitted to deny the *facts* alleged by him in a judicial proceeding, which have been acted upon by others through his procurement, so as to impeach their claims founded thereon, as in the cases cited above from 7 Taunt. and 5 Barn. & Cres.; but these fall legitimately and properly within the other rule before stated.

It is said, that in some cases connected with the administration of public justice and of government, admissions are held conclusive on grounds of *public policy*—as that he who has given money to another for his vote, shall not deny his right to vote—an intermeddler with the goods of a deceased shall not deny that he is executor—and some other cases mentioned by Mr. Greenleaf, and in the notes to his 2d edition, § 210 of vol. 1.

But none of these go to the extent of including a case like the present. *Freeman* v. *Walker*, 6 Greenlf. 68, goes further than any other that I have found, in which a sworn denial of any fraud on the part of the ship-master, made by the owner in an application for the release of his ship from forfeiture, which was granted by the secretary of the treasury, was held to conclude the owner in an action by the master against him for wages, in which he desired to prove the master's misconduct. If this case is to be deemed law, it must be, I think, from the jealousy with which frauds upon the state itself are guarded against, and the rigorous rules with which the revenue laws are fenced about, both in England and this country. *Nicholls* v. *Downs*, 4 Carr. & Payne, 330, as well as the case referred to by counsel, shows that such an affidavit as the present does not conclude the party *because* it was used or attempted to be used in a judicial proceeding for his advantage, when its truth is questioned in a suit *not founded upon such* proceedings *nor affected by it.* That was not a case in which the debtor swore falsely as to what he *owed*, but in which his schedule did *not* contain the debt he *now* claimed to be due to him; and it was urged, that as his schedule purported to contain *all* his assets, he was estopped now to claim that a debt not therein mentioned was due. Surely, public policy, if it applied at all to such cases, would seem to require that what might properly be regarded as a fraudulent attempt to keep back, from his assignees and from his creditors, a portion of his assets, should be punished by withholding from *him* all hope of the future recovery of the debt. But it was not so held. It was

deemed a very strong circumstance for the jury, but not conclusive.

The same is held of an answer in chancery, *Doe* v. *Steel*, 3 Camp. 115, and of a bill in chancery, 7 T. R. 3.

This, in my judgment, is the true character of the affidavit. It was a solemn admission of the debt—it was entitled to great weight as such. It would go far to support any claim to avoid the release, if there was the slightest evidence to invalidate it. In the absence of any explanation or history of either the one or the other, it might overcome the release. And it was proper to be considered by the referees in connection with all the circumstances alleged and proved by the parties. The cases cited by the plaintiff's counsel (*Peacock* v. *Harris*, 10 East, 104; *Radford* v. *McIntosh*, 3 T. R. 632; *Dickinson* v. *Coward*, 1 Barn. & Ald. 677, and *Berryman* v. *Wise*, 4 T. R. 366) are all regarded as admissions proper to go to the jury, but it was neither urged nor held that they were conclusive.

Entertaining these views, we conclude that the evidence was properly received, and that the finding of the referees upon the facts (under circumstances of no little embarrassment and uncertainty, respecting the true relations of the parties under all the evidence, relating as well to the release as to the alleged payment by transfer of the church contract, and especially where the good faith of both parties is involved in such doubt) ought not to be disturbed.

The motion to set aside the report of the referees must be denied, with costs.

Ordered accordingly.