## TRUSCOTT *vs.* DAVIS and ROBINSON.

A party to a note is a competent witness to prove it to have been void in its inception, on the ground of usury. MARVIN, J. *dissenting.*

Although a transaction is technically usurious, yet a party may, by his own conduct, have forfeited the privilege of setting up that defence. *Per* SILL, J.

Principles upon which estoppels *in pais* are permitted.

The possession of a promissory note, by the payee, and the apparent ownership thereof by him, together with his assertion, at the time he negotiates the same, that it is business paper, are not alone sufficient to create an *estoppel*, which will prevent him from insisting, when sued as endorser, that the note was void in its inception, on the ground of usury. *Per* SILL, J.

If the holder of a note, represented by the endorser to be business paper, knows the character of the paper, or has good reason to suspect its character, or does not purchase in consequence of the representations of the payee, he cannot set them up as an estoppel. *Per* SILL, J., MARVIN, J. *dissenting.*

To make false representations by the payee, respecting the character of the paper transferred, available to the holder, as an estoppel, so as to prevent the payee, when sued as endorser, from setting up the defence of usury, they must have been made for the purpose of inducing the holder to purchase the paper. *Per* SILL, J.

He must have confided in, and in good faith acted upon, such representations. He must have been deceived by them, and have acted under that deception. *Per* SILL, J.

MOTION by the plaintiff for a new trial, on a bill of exceptions. The cause was tried before the late circuit judge of the 8th circuit. The action was brought to recover the amount of a promissory note made by the defendant Robinson, payable to the order of the defendant Davis, and by him endorsed to the plaintiff. It was proved that the note was lent by Robinson to Davis, to enable him to raise money, and that the plaintiff purchased it of Davis at a usurious rate of interest; the note having no inception till it passed to the plaintiff. It appeared also that Davis, at the time of the sale, represented to the plaintiff, in writing, that it was a business note, valid in his hands against the maker. The plaintiff required of him this written statement. Davis was offered as a witness for the maker, to prove the usury, and was objected to by the plaintiff's counsel, on the

Truscott *v.* Davis.

ground that a party to a note was an incompetent witness to show it void in its inception. The objection was overruled, and the plaintiff's counsel excepted, and the witness was sworn. The counsel for the plaintiff requested the circuit judge to charge the jury that, if the plaintiff purchased the note of Davis relying on his representation that it was business paper and a valid demand in his hands, and was induced by such representation to believe that such was the case, and to purchase the note, Davis was estopped from setting up usury as a defence. The judge refused so to charge, but charged that the certificate signed by Davis, or any representation that Davis might have made at the time of negotiating the note, that it was business paper, could not change the character of the transaction, either as between the plaintiff and Robinson, or the plaintiff and Davis. To which refusal to charge as requested, and to the charge as made, the plaintiff's counsel excepted. The jury found a verdict for the defendants.

*S. G. Haven,* for the plaintiff, cited *Holmes* v. *Williams,* (10 *Paige,* 326 ;) *Dowe* v. *Schutt,* (2 *Denio,* 621 ;) *Davison* v. *Franklin,* (1 *Barn. & Ad.* 142.)

*B. H. Austin,* for the defendants.

SILL, J. Early decisions in this state held a party to a note incompetent to prove it void in its inception. It has been so held also in England, and is now the rule in some of the states. But the contrary doctrine has been too often sanctioned and too long acted upon in this state, to be now questioned in this court. The exception to the competency of Davis as a witness for Robinson, cannot be sustained.

The case of *Holmes* v. *Williams,* (10 *Paige,* 326,) is cited by the plaintiff to show that this transaction was not usurious, as between Trescott and Davis. In that case the defendant purchased of one Holmes, at a usurious discount, a draft which had been put into his hands by the drawees to negotiate for their benefit ; Holmes having in fact no interest in it, although

Truscott *v.* Davis.

he represented to the defendant that he was the owner, and that the paper was a valid obligation in his hands. After the paper matured, Holmes took it up, by giving his own obligation with other names not on the original paper. The learned vice chancellor, (now a justice of this court,) who decided that case in the first instance, and whose very able opinion was adopted by the chancellor, held that the first draft was void in the hands of the defendant for usury, but he being a bona fide holder, and having received a new security, the latter was valid. There seems to be authority for this distinction. The doctrine laid down by the vice chancellor is therefore against the plaintiff here; no new security having in this case been given.

The chancellor wrote no opinion, but is reported to have said, "that he concurred in the opinion of the vice chancellor, that when the holder and apparent owner of negotiable securities sells them at a discount, to a bona fide purchaser, who has no knowledge of the purposes for which such securities were made, the holder representing such securities to belong to himself, and to be business paper, the transaction was not usurious, as between the vendor and vendee; although the representation of the vendor was false, and the securities were in fact made for the sole purpose of being sold at a usurious discount in the market."

Although these remarks imply that the vice chancellor had so held, yet the fact is that he decided directly the other way, and I must, with deference, express my entire dissent from the learned chancellor's views, as there expressed, of this particular branch of the usury law. In the language of Vice Chancellor Gridley, in the case cited, (*Id.* 328,) "it is the settled doctrine of the courts, that such a transaction is usurious."

But the true inquiry in this case is, whether Davis is estopped from setting up this defence. Facts may exist which, in the eye of the law, constitute a defence, yet a party may, by his own conduct, deprive himself of the right of setting it up; as in this case, although the transaction is technically usurious, yet Davis may have forfeited the privilege of asserting it.

Truscott *v.* Davis. .

The principle upon which an estoppel *in pais* is permitted, is laid down in *Welland Canal Co.* v. *Hathaway*, (8 *Wend.* 483,) and *Dezell* v. *Odell*, (3 *Hill*, 221, 2.) In the first case it is said, " As a general rule a party will be concluded from denying his own acts. or admissions, which were expressly designed to influence the conduct of another, and did so influence it; and when such denial will operate to the injury of the latter." And again, " the acts and admissions of the party operate against him in the nature of an estoppel, when in good conscience and honest dealing, he ought not to be permitted to gainsay them." In *Dezell* v. ·*Odell*, Mr. Justice Bronson says, "When a party, either by his declarations or conduct, has induced a third person to act in a particular manner, he will not afterwards be permitted to deny the truth of the admission, if the consequence would be to work an injury to such third person, or some one claiming under him." "Before the party is concluded, it must appear, 1. That he has made an admission which is clearly inconsistent with the evidence he proposes to give, or the title or claim which he proposes to set up. 2. That the other party has acted upon the admission. 3. That he will be injured by allowing the truth of the admissions to be disproved. Upon these principles the decision of the circuit judge was manifestly erroneous. The law allows the sale and purchase of business paper at any price the parties agree upon. If Davis, by his representations, induced the plaintiff to believe that the note was business paper, and under such belief to purchase it, he cannot be permitted, after entrapping the plaintiff into an unintentional breach of the law, to make a profit out of his own falsehood, at the expense of an innocent party. It would be a gross fraud, which ought not to be tolerated, much less sanctioned, in a court of justice.

The possession of the paper and apparent ownership by Davis, and his assertion that it was business paper, are not, however, alone sufficient to create an estoppel. All these are consistent with the belief and even knowledge by the plaintiff that the paper was made for Davis' accommodation. If he knew the character of the paper, or had good reason to suspect its char-

acter, or did not purchase by reason of the defendant's represen-tations, he cannot set them up as an estoppel. To make the representations available to the plaintiff as such, they must have been made to induce a purchase of the note. He must have confided in, and in good faith acted upon, them. In short he must have been deceived by them, and acted under that decep-tion. If the plaintiff can establish this state of facts, Davis should not be heard in court to set up the usury.

The defendant Robinson, however, stands on different ground. He was no party to the negotiation with Truscott, and is in no way connected with the fraud. Davis' act cannot estop him. (*Dowe* v. *Schutt*, 2 *Denio*, 621.)

As to Robinson, a new trial must be denied with costs. And as to Davis, the motion must be granted; costs to abide the event.

HOYT, J. concurred.

MARVIN, J. The note was not a valid note in the hands of Davis. It was a mere accommodation note made to raise money on, and could not have been enforced by him against Robinson, at maturity. A note has no binding force or legal inception until it is delivered, and in the hands of a bona fide holder. Truscott was never a bona fide holder. The illegal discount he exacted infected it with the taint of usury, and, in the language of Chancellor Jones, in *Powell* v. *Waters*, (8 *Cowen*, 687,) thus implanted in its inception and birth, the seeds of its death. It never had any vitality as a note. It im-posed no binding obligation upon either the maker or endorser, as it was entirely void and no better in the hands of the plain-tiff than blank paper. How then can the *note* be used as the foundation of an action? Suppose Davis practised a fraud upon the plaintiff, does that make the note, as to him, valid, so as to authorize the plaintiff to recover upon it against him as en-dorser, upon the principle that he is estopped from denying his representations? The position must go this length, or the plain-tiff cannot recover in this action. The statute authorizing a

suit against the maker and endorser of a note, does not authorize a recovery for any other cause. The only proof, that can be used in such a case, is the note. The form of the action may be for money lent, or had or received, but the only evidence of money lent, &c. is the note. The plaintiff, in such a case, cannot abandon the note and proceed against one of the defendants, for a cause of action independent of the note. If, therefore, the plaintiff had a good cause of action against Davis for the fraud, in obtaining money by false representations, he could not join Robinson in that suit; for the statute only authorizes the joinder in the case of maker and endorser of a *note ;* and it will not change the case to say, the plaintiff may waive the fraud and sue in assumpsit for money had and received; for in such case his suit must be against Davis alone, the party who defrauded him and who received the money. It is true the statute provides that a recovery may be had against one of the parties to the note, and in favor of another; but it is to be borne in mind that the statute is speaking of a note or bill of exchange as the very foundation of the right to join the different parties in the same action. Now if this note, so called, was never a note, but was void—a mere blank piece of paper—then the statute authorizes no such action.

It will not be denied that this paper was invalid as a note in the hands of Davis. It was not, therefore, the subject of a sale at a greater rate of discount than the legal rate of interest. The test as to the validity of the note in the hands of the holder, is his right to maintain a suit upon it, if it was then due, against the parties to it. (15 *John.* 55. *Powell* v. *Waters,* 8 *Cowen,* 685, 6, 7, 697.)

It is insisted, however, that as Davis, at the time he passed the note to the plaintiff, represented it to be a valid business note in his hands, he cannot now be permitted to deny the fact, but that he is estopped by his representations; and that as between him and the plaintiff all inquiry as to usury must be shut out. I cannot acquiesce in this position. Such an application of the doctrine of estoppel would in my judgment go far to repeal the statute of usury. No countenance has been given

Truscott *v.* Davis.

to the application of this doctrine to the transactions *between parties to usurious agreements,* so far as I have discovered, unless the cases of *Holmes* v. *Williams,* (10 *Paige,* 326,) and *Dowe* v. *Schutt,* (2 *Denio,* 621,) which are claimed as authority, are exceptions. I shall hereafter advert to these cases.

The cases of a sale of accommodation paper at a rate of discount greater than the legal rate are very numerous, and the decisions have not turned upon the question whether the purchaser knew, or had reason to believe, that the paper was not valid business paper. On the contrary, when the purchase or discount has been at a usurious rate, the sole inquiry has been was the paper a valid note in the hands of the party passing it, so that, if it was then due, he could enforce it as against the prior parties to it. If it was such paper, then any person might purchase it at any discount. If, however, it was not such paper, then a purchase or discount of it a greater rate than legal interest was usurious, and no action could be maintained upon it. He who takes it, takes it at his peril, and though he may have supposed that it was given in the ordinary course of business, it is nevertheless void. (8 *Cowen's Rep.* 690.)

The note itself, in the hands of the payee, has every appearance of a valid operative note; and when offered in market by him, it contains a representation or declaration upon its face that it is a valid note in the hands of the payee. This is the presumption of law; and before the defence of usury can be set up, it must be shown by the defendant that the paper was not the thing which upon its face it purported to be. Does not the payee, in every case of a sale by him of a note, represent, by the note itself, that it is a valid business note? He may remain silent, but he permits the paper to speak for him; and if the doctrine of estoppel is to be applied to oral representations, for the purpose of shutting out the real transaction, how long will it be before it will be extended to the representation made by means of the note itself? The difference in principle is certainly slight.

Estoppels are not favored, and I apprehend they are never allowed for the purpose of shutting out the truth of a transaction which, when the truth is known, shows the transaction to be ille-

gal. Lord Kenyon says, " Estoppels are odious, and ought not to be extended farther than the law has already carried them." (7 *T. R.* 604.)

In the present case, if the note'had been a valid note in the hands of Davis, as he represented, the plaintiff would have acquired a good title to it, and would have violated no law by purchasing it at a discount; but on the other hand, if the note was not valid, then the agreement between him and Davis was usurious and illegal, notwithstanding the representations of Davis. The plaintiff may not have intended to violate the law, yet he has violated the usury laws by discounting the paper at a higher rate of interest than the law allows. He cannot protect himself by an estoppel He is not a bona fide holder of the note, as he acquired it through an agreement, which by all the authorities was illegal. He took this risk; and it is against the policy of the usury laws, that any light should be excluded from the transaction. In the case of *Holmes* v. *Williams,* (10 *Paige,* 326,) cited on the argument, the chancellor has used language which it is claimed fully sustains the position of the plaintiff in this case. In that case the chancellor affirmed the decree of Vice Chancellor Gridley, and as I understand the vice chancellor's opinion, it is an authority in favor of the defendants in this case. Holmes had in his possession an accommodation draft which he negotiated and endorsed to the defendant Williams, at a discount greater than the legal rate, *representing at the time, to Williams, that the draft was business paper and was the property of himself or himself and partner.* Sometime after the draft was thus transferred to Williams, the drawers applied to Holmes for the draft, and he applied to Williams and effected an arrangement, whereby he, another Holmes, and one Kellogg as surety, gave a note for the amount of the draft, payable at a future day, and received the draft from Williams. The bill was filed by the makers of the last note, against Williams, for relief. In considering the question of usury arising on the *draft,* the vice chancellor expressly decided that the transaction was usurious, notwithstanding Williams contracted to buy the draft as business paper, and sup-

posed and believed it was so.  He dismissed the bill however, putting his decision upon the ground that Holmes, in negotiating the draft, had practised a *fraud* for which he was liable in an action ; and that the giving of the second note might be treated as a settlement for the fraud, and thus there was a new and good consideration for it.  The chancellor, in concurring in the opinion of the vice chancellor, in a single sentence, lays down a rule broader than that of the vice chancellor.  I confess I am unable to reconcile the rule laid down by the chancellor with the numerous authorities which declare such paper entirely void ; unless we suppose he intended to say that although the note was void, the party making the false representation should not be admitted to allege it ; thus engrafting a new principle upon the usury laws.  That case did not require the establishment of so comprehensive a principle.  The question was not involved in *Dowe* v. *Schutt*, (2 *Denio*, 621.)

In *Cram* v. *Hendricks*, (7 *Wend*. 569,) the learned chancellor insisted that the transfer of a note valid in the hands of the holder, for a sum less than the amount of the note, if endorsed by the transferor, was a usurious transaction, and that the endorsee could not recover against the endorser.  The court of errors decided otherwise, and held that it was a sale of the note, and that the nature of the contract on the part of the endorser was, that in case the maker did not pay the note, he, the endorser, would pay the amount he actually received, with legal interest.  This decision was in accordance with 7 *John*. 361 ; 13 *Id*. 52 ; 15 *Id*. 44.  All the senators who delivered opinions agreed that had the note in that case been made to raise money upon, that is, not a valid note in the hands of Cram at the time he passed it to Hendricks, the transaction would have been usurious.  (*See opinions of Senators Allen, p*. 596, 597, 607 ; *and Beardsley*, 616, 617.)

We are now asked to go further and declare that a note, which had no inception until it passed to the plaintiff under a usurious agreement from which it received its death, shall notwithstanding have so much life as to enable the holder to collect it of the endorser, and thus render his contract legal, which

the statute declares utterly void, or rather, we are asked to apply the doctrine of estoppel, and exclude the evidence which shows the transaction to be usurious. I cannot agree thus to apply this doctrine to cases coming within the provisions of the usury laws. I think there was no error in the decision of the circuit judge; and the motion for a new trial should be denied.

Motion granted, as to Davis, and denied, as to Robinson.

---

SARATOGA GENERAL TERM, November, 1848.    *Cady, Paige, Willard, and Hand,* Justices.