JACKSON *vs.* FASSITT and others.

THE SAME *vs.* THE SAME.

The service of a copy of the case and exceptions is equivalent to a formal notice of appeal.

Motions for new trials are, by the code, restricted to cases in which verdicts have been rendered in trials before juries. The provisions of the chapter relating to "trial by jury" are aimed at the verdict, and contemplate that the motion for a new trial shall be made before the entry of the judgment, either before the judge who has presided at the trial, or at a special term.

After the entry of judgment, the only manner in which the proceedings can be reviewed is by an appeal to the general term.

But when the judgment is allowed to be entered by an order of a judge, or the court, for the better security of the party in whose favor the verdict was rendered, the right may be reserved to the other party to make his motion for a new trial.

The liberty to enter up judgment, when motions for new trials are pending, is at the instance of the party who has obtained the verdict, and is for his benefit; and, in granting the liberty, the court has the right to annex this condition to it.

If a judgment is not entered up merely as security, and neither the court, nor a judge, has made any directions in regard to it, but it is entered in the ordinary way, without any stipulation or order reserving the right to move for a new trial, a motion for a new trial, if made, should be denied.

Where the maker of a promissory note, or the acceptor of a bill or draft, gives it to the maker or drawer merely to enable him to raise money on it, without any directions or instructions, he is not bound by the representations of the maker or drawee, that it is business paper.

Accordingly, where, in an action by the holder against the drawer and acceptors of a bill of exchange, the judge charged the jury that if they believed the drawer represented to the plaintiff that the bill was drawn and accepted in the ordinary course of business and was business paper valid in his hands, and that the plaintiff in good faith acted upon such representations and bought the paper relying upon these statements, then the acceptors were bound by them and estopped from setting up usury as a defense; *it was held* that the charge was erroneous.

THESE actions were tried before the Hon. WILLIAM F. ALLEN, and a jury, May 14, 1858. The plaintiff recovered a verdict. Upon the rendition of the verdict, it was stipulated that the defendants have forty days to make a case and exceptions, and in the meantime, and until judg-

ment upon the same, if security given, all proceedings on the part of the plaintiff, except entry of judgment and adjustment of costs, to be stayed. October 11, 1858, the defendants gave a bond out of court for payment of judgment, costs and interest, &c. ; and it was stipulated, the same day, by the plaintiff, to withdraw executions which had been, as claimed by the defendants, irregularly issued, and stay all proceedings to enforce said judgments, until the final determination of the motions for a new trial, or the appeals therefrom, or from such judgments. October 29, 1858, the plaintiff served upon the defendants a notice of judgment, which was returned as irregular, upon the ground that the plaintiff was restrained by his stipulations from taking farther proceedings, until final judgment upon the case and exceptions. Judgments were entered May 18, 1858. Proposed case and exceptions served upon the plaintiff's attorneys, May 27, 1858. Case and exceptions, as settled, were duly filed, and the plaintiff's attorneys served with a copy July 10, 1858. The motions for a new trial were duly noticed for argument at special term, by the defendants, for each term, commencing with September term, 1858, until January term, 1859. January 14, 1859, the causes were reached and argued at special term. New trials were denied, for want of jurisdiction in the special term to entertain the proceeding, and also, if there were jurisdiction, for want of merits, so that the whole case might come before the general term.

From this order the defendants, on the 16th of February, 1859, gave notice of appeal, and also, without waiving a previous appeal, gave notice of appeal to the general term, from the judgment.

The facts of the case, upon the merits, are stated in the opinion of the court.

*John S. Washburn,* for the appellants.

*R. B. Roosevelt,* for the plaintiff.

Jackson *v.* Fassitt.

*By the Court*, CLERKE, P. J. I. With regard to the motion to dismiss the appeal from the judgments; the question, whether the service of a copy of the case and exceptions is equivalent to a formal notice of appeal, is no longer an open question in this court. The case of *Sherman* v. *Wells*, (14 *How. Pr. Rep.* 522,) expressly decides that it is. In that case, as in this, it does not appear that any copy of the case and exceptions, or any notice whatever, had been served on the clerk.

II. Sections 264 and 265 of the code prescribe and regulate the practice relative to motions for new trials. Such motions are evidently restricted to cases in which verdicts have been rendered in trials before juries. The chapter (*ch.* 3, *tit.* 8) in which these sections are contained, is headed " Trial by jury," and all its provisions apply only to that form of trial. The directions, prescribed by these sections, are aimed at the verdict, and contemplate that the motion for a new trial must be made before the entry of the judgment, either before the judge who has presided at the trial, or at a special term; after the entry of judgment, the only manner in which the proceedings can be reviewed is by an appeal to the general term. But when the judgment is allowed to be entered by an order of a judge, or the court, for the better security of the party in whose favor the verdict was rendered, the right may be reserved to the other party to make his motion for a new trial. The liberty to enter up judgment, when motions for new trials are pending, is at the instance of the party who has obtained the verdict, and is for his benefit; and, in granting the liberty, the court has the right to annex this condition to it. But, in the present case, I cannot find that the judgments were entered up merely as security, or that the court, or a judge, made any directions in regard to them ; they were entered in the ordinary way, without any stipulation or order that the right to move for a new trial should be reserved. I think, therefore, that the decision of the special term on this point was correct.

III. As the defendants, however, are not debarred from being heard on the exceptions at the general term, as we have decided in the first part of this opinion, I shall proceed to examine the question presented by those exceptions.

These actions were founded each on a draft for $491.31, dated September 3, 1857, drawn by John Meads, jun. on the defendants Fassitt & Washburn, one payable three months, the other four months after date, to the order of Meads, and accepted by Fassitt & Washburn. They were given in renewal of a draft for $963, dated February 17, 1857, also drawn by Meads on Fassitt & Washburn, and accepted by them. Meads made the draft for the purpose of raising money for himself, and it was accepted by Fassitt & Washburn solely for his accommodation. On the application of Meads, the plaintiff discounted this original draft at a rate exceeding legal interest. The plaintiff held it until maturity, when the drafts in suit were given as a substitute. The plaintiff gave evidence tending to show that, at the time he took the original draft, Meads, the drawer, represented to him that it was regular business paper valid in his hands, and that he, the plaintiff, bought it, relying upon such representations. The court charged the jury that if they "believed that the drawer represented to the plaintiff that the bill was drawn and accepted in the ordinary course of business, and was business paper valid in his hands, and that the plaintiff, in good faith, acted upon such representations, and bought the paper, relying upon such representations, then Fassitt & Washburn, defendants, were bound by them, and estopped from setting up usury in defense." To this part of the charge the defendants excepted, and asked the court to charge, "that if the jury should find, from the evidence, that the original draft was negotiated for the first time to the plaintiff, and discounted at a rate exceeding lawful interest, and the draft in suit was given in renewal thereof, and for no other consideration, it was usurious and void; and these defendants could avail themselves of this defense, notwithstanding

Jackson *v.* Fassitt.

any representations." The court declined thus to charge, and the defendants' counsel excepted.

It has been settled in this district, at general term, that a party to accommodation paper, who sells it as business paper at a usurious discount, is estopped from setting up usury as a defense. It is not necessary or proper to consider the reasoning, and principles, upon which this decision was founded. Although I took no part in it, I shall of course deem it obligatory upon all the members of the court. The question in the present case extends farther, and is, where the maker of a promissory note or the acceptor of a bill or draft gives it to the maker or drawer merely to enable him to raise money on it, without any directions or instructions, is he bound by the representations of the maker or drawee, that it is business paper? Does the mere fact that the maker or acceptor has given this accommodation paper to his friend, imply an authority to make those representations? It is urged by the plaintiff's counsel that the defendants, by giving this paper to Meads, put it into his power to deceive the plaintiffs, and consequently that they should be bound by them. Undoubtedly if one person puts another in a position where the inevitable or even probable result is to deceive others by false representations, they may very justly and properly be taken as true against the former. But can this apply to the act of giving accommodation paper to another? There is nothing whatever in the case to show that the defendants had any reason even to suspect that the proceeds of the draft were to be raised by an usurious agreement. The commission of usury is in the lender an indictable offense, and it can never be presumed of any man that he intended any participation in a crime, or that he encouraged others to perpetrate it. It would be extending the doctrine of implied agency rather too far, to hold that, in all cases, where one places an instrument in the hands of another, which is capable of being employed in effecting a wrong, but quite as capable of being legally employed, the former should be held responsible for the ille-

gal employment of it.    To have this effect, I should think something more than inference or presumption ought to be shown.  The presumption should be rather the other way—that the defendants supposed the money was to be legally raised. Banks and private individuals frequently discount paper at legal interest, and are very glad, when money is abundant, to get seven per cent for it; and a creditor very often readily accepts accommodation paper as security for his debt, without requiring any thing more for forbearance than legal interest. Why should we then presume the defendants were aware that this money was to be obtained by usury; and to imply any authority to Meads to make these representations, it should at least be shown they were aware of this.   And as I have already said, there is not a particle of evidence to show that they ever suspected any such intention.

I think therefore the judge at the trial erred in charging the jury, that if they believed the drawer represented to the plaintiff that the bill was drawn and accepted in the ordinary course of business, and was business paper valid in his hands, and that the plaintiff in good faith acted upon such representations, and bought the paper relying upon these statements, then Fassitt & Washburn were bound by them and estopped from setting up the usury in defense.

The judgment should be reversed, with costs.

[NEW YORK GENERAL TERM, February 4, 1861.  *Clerke, Sutherland* and *Allen,* Justices.]