## FERGUSON *vs.* HAMILTON.

A review of a case, on the law, may now be entertained on the judgment roll and exceptions to the findings and conclusions of the referee, taken and filed after judgment. No *case* need be made, where the party takes no ex-ceptions during the trial, and is satisfied with the facts found by the referee, and desires only to review his conclusions of law thereon.

Exceptions to such conclusions, however, must in due time be filed and served.

In such a case the facts must stand as found by the referee, and the question will be whether his conclusions of law are correctly deducible from the facts found and stated.

An estoppel *in pais* may be urged against the defense of usury, as well as against other matters of defense which involve no idea of moral or legal turpitude in the party who invokes its protection. But the matter of estop-pel must exist outside the face of the paper.

It is available against the maker, as well as the indorser.

Where the maker of a note employs an agent, to negotiate the sale thereof, to raise money to pay their joint debts, and the latter, on selling and trans-ferring the same, assures the purchaser that the note is valid business pa-per, in his hands, the maker will be bound by the representations of the agent, and will be estopped from setting up the defense of usury.

In the absence of any limitation to his authority, it is within the powers of an agent employed to sell negotiable paper, to represent it as being a business note and valid.

APPEAL by the defendant from a judgment entered upon the report of a referee. The action was brought by the holder against the maker of a promissory note, dated Novem-ber 25, 1858, for $104 and interest, payable to Hiram Hale, or bearer, one year after date. The defendant alleged in his answer, that the note was made by him for the purpose of raising money by a discount thereof, and not for any consid-

eration moving from Hale, the payee, to the defendant, nor upon any business transaction whatever between the said Hale and the defendant; that the said note, at the making thereof, was placed in the hands of Hale, as the agent of the defendant, for the purpose of raising money upon it, for the defendant's benefit, and the note had no valid existence or inception until the same was transferred and delivered by the said Hale to Lyman Ladd, (who transferred it to the plaintiff;) that after the making of the said note, and about the 26th day of November, 1858, it was corruptly agreed by and between the said Lyman Ladd of the one part and the defendant (by the said Hale as his agent) of the other part, that Ladd should discount the note at a rate of interest exceeding seven per cent per annum, to wit: the sum of five dollars for the loan of ninety-nine dollars for one year, over and above seven per cent interest for one year on the said sum of $104; and thereupon, in pursuance of the said usurious agreement, the said Lyman Ladd loaned and advanced to the defendant, (through his agent, the said Hale,) upon and for the said note, the sum of ninety-nine dollars, and the said Hale then and there, as the agent of the defendant, delivered to the said Ladd, as security for the said loan, the note described in the complaint; and the defendant insisted that the note was at its inception, and is wholly usurious and void.

The referee found the following facts: That the defendant is the maker and the plaintiff the owner and holder of the promissory note described and set forth in the complaint, and that there was paid thereon, November 22, 1859, $30, and December 30, 1859, $20, leaving due and payable upon the said note the sum of $68.85; that the defendant is the son-in-law of Hiram Hale, the payee of the note; that the defendant and Hale had been carrying on a farm together in the year 1858, and owed some joint debts; that the note was made by the defendant and delivered to Hale with the expectation of raising money thereon from one Copeland, but

Ferguson *v.* Hamilton.

was not used for that purpose, and that Hale had authority from the defendant to negotiate the sale and transfer of the note for the purpose of raising money to pay their joint debts. That no consideration passed between Hale and the defendant at the making of the note, and that Hamilton was not indebted to Hale at the time, except upon a land contract, which was not then due. That in December, 1858, from three to five weeks after the making and delivery of the note by the defendant, Hale met Lyman Ladd, and said to him that he wanted to raise some money, and spoke of making a bank note and getting Ladd to indorse it. Hale then said to Ladd that he had a note against Hamilton that he would sell him at a discount of five dollars on a hundred; that Ladd inquired if the note was good, and Hale replied that it was a good note; that Hale did not inform Ladd of the circumstances attending the making of the note, but represented in subtance, and led Ladd to believe, that the note was a good note, given for value, and then held by him, the said Hale, and that Ladd received the note, believing it to be a valid, subsisting obligation in the hands of Hale at the time of the sale; that Ladd received it and Hale indorsed the note, and Ladd paid Hale $100, or a few cents less, for the note; that Hale applied the money, so received, mostly to the payment of the joint debts of himself and defendant, and partly to their individual debts. The referee found, as a conclusion of law, that the defendant was indebted to the plaintiff upon the note mentioned in the complaint, in the sum of $68.85, and entitled to judgment for that sum.

*Knowles & Bicknell,* for the appellant. I. The note did not take effect—" had no inception"—before Ladd discounted it at a usurious rate. It was therefore in his hands, and is yet, void. Ladd's belief that Hale was owner, and he a purchaser, is immaterial. (*Laws of* 1837, *ch.* 430, § 1. *Powell* v. *Waters,* 8 *Cowen,* 669. *Aeby* v. *Rapelye,* 1 *Hill,* 10. *Dowe* v. *Schutt,* 2 *Denio,* 621. *Clark* v. *Sisson,* 22 *N. Y. Rep.* 312.)

II. The misrepresentations of Hale were not authorized by the defendant, and do not prejudice his defense. (1.) Hale was a special agent, and his authority included only the ordinary or necessary means of the transfer authorized. (*Dunlap's Paley on Agency,* 189, 199, 202. *Nelson* v. *Cowing,* 6 *Hill,* 336.) The raising money at *legal* rate of interest must be deemed the ordinary rate. The law will not presume authority or intent to violate its precepts, but the contrary. (1 *Greenl. Ev.* §§ 34, 35. 3 *id.* § 254. *Cow. & Hill's Notes to Phil. Ev.* 297, 8. *Owings* v. *Hull,* 9 *Peters,* 608, 628. *Jackson* v. *Fassitt,* 21 *How. Pr. R.* 279.) Any means, therefore, tending to the usurious transfer, were unauthorized. (2.) The representation by Hale that he was the owner of the note, selling for himself, was not within the scope of the agency—was in effect a denial of any agency. (*N. Y. Life Ins. and Trust Co.* v. *Beebe,* 3 *Seld.* 364.)

III. If Hale was authorized to make and did make the representations as agent, we have the case of a maker offering his own note for sale, and representing it to be a valid, subsisting obligation in his hands; which is an absurdity. No one exercising ordinary discretion would have *believed* this, or acted upon it. (4 *Barb.* 499. 16 *Wend.* 575. 2 *Sandf.* 60. 1 *Greenl. Ev.* §§ 22, 204.)

*W. H. Sawyer,* for the plaintiff. I. The question in this case is one of estoppel. (1.) The referee finds as a fact that Hale sold the note to Ladd by falsely and fraudulently stating and representing to him, and inducing him to believe, that the note was a good note, given for value and then owned by Hale. Hale, therefore, would be estopped from alleging any thing affecting the validity of the note, contrary to his former representations. (*Dezell* v. *Odell,* 3 *Hill,* 215, 222. *Welland Canal Co.* v. *Hathaway,* 8 *Wend.* 480. *Holmes* v. *Williams,* 10 *Paige,* 326, 333. *Truscott* v. *Davis,* 4 *Barb.* 495.) (2.) The answer alleges that Hale, the payee of the note, received it from the defendant Hamilton, the maker, as

Ferguson *v.* Hamilton.

the agent of the defendant, for the purpose of raising money thereon for the benefit of the defendant. That the agreement for the sale of the note to Ladd was made by Ladd of the one part, and the defendant of the other part, through Hale, the defendant's agent, and the referee finds as a fact that Hale had authority to negotiate the note. He negatives the corrupt agreement on Ladd's part, finding that he was an innocent purchaser. Hale's acts, therefore, in negotiating the note were the defendant's acts, and Hale's fraud the defendant's fraud. The case then stands thus : The defendant induced Ladd to purchase the note, by falsely and fraudulently stating and representing to him that the note was a valid note, given for value, and a valid and subsisting obligation in Hale's hands against the defendant; and he now asks that his fraud be made a defense to his obligation to pay. Ladd was an innocent purchaser, and the defendant cannot, as against him or his assignee, take advantage of his own fraud. As to them he is estopped. Usury cases furnish no exception to the doctrine of estoppel. (*Truscott* v. *Davis,* 4 *Barb.* 495. *Clark* v. *Sisson,* 22 *N. Y. Rep.* 312. *Mechanics' Bank* v. *Townsend,* 17 *How. Pr. R.* 569. *Mitchell* v. *Oakley,* 7 *Paige,* 68. *Holmes* v. *Williams,* 10 *id.* 333.) (3.) In order to bind his principal, it is not necessary that the contract should be in the name of the principal. The principal will be bound though the agent contract in his own name. (*Bank of Genesee* v. *Patchin Bank,* 13 *N. Y. Rep.* 309, 318. *Evans* v. *Wells,* 22 *Wend.* 324, 340.)

II. Hamilton adopted and ratified the acts of Hale, in the sale of the note, by subsequently making payments thereon. A subsequent ratification is equivalent to an antecedent authority, and draws after it all the liabilities that attach to the original transaction. (*Farmers' Loan and Trust Co.* v. *Walworth,* 1 *Comst.* 433. *Lawrence* v. *Taylor,* 5 *Hill,* 107. *Id.* 137. *Davis* v. *Shields,* 24 *Wend.* 322. *Johnson* v. *Jones,* 4 *Barb.* 369.) When the act of the agent will bind, or is ratified by the principal, then his representations and admis-

sions respecting the subject matter will also bind him if made
at the time and constituting part of the *res gestœ*. (*Story
on Agency*, 126. *Sandford* v. *Handy*, 23 *Wend.* 260, 266.)
Having adopted and ratified Hale's act, he is now estopped
to say that he did not authorize it.

III. The referee finds as a fact, that Hale was authorized
to negotiate the note to raise money for the joint use of Hale
and the defendant, and that the money raised by the sale of
the note was applied to their joint use.   Both the defendant
and his agent, then, were equally interested in having the note
discounted, and they equally participated in the benefits.
They were in fact partners, and the note was made, sold, and
the avails of it applied to the partnership use.   Hale, in the
sale of the note, perpetrated a deliberate and willful fraud,
in the fruits of which the defendant equally participated, and
he is bound by Hale's representations and as much estop-
ped as Hale would be.   He cannot retain the benefit of Hale's
fraud, and claim immunity on the ground that the fraud was
not his.   (*Bennett* v. *Judson*, 21 *N. Y. Rep.* 238.)   Ham-
ilton is chargeable with knowing and consenting to the fraud-
ulent representations of Hale that the note was his property.
(*Bank of the U. S.* v. *Davis*, 2 *Hill*, 451, 462, 3.   *Jeffrey*
v. *Bigelow*, 13 *Wend.* 518, 520.)

IV. (1.) The note was not an accommodation note for
Hale's benefit, but was made by the defendant to be sold as
Hale's note for the defendant's benefit.   It is an entirely dif-
ferent transaction from that of *Dowe* v. *Schutt*, (2 *Denio*,
621.)   Even that case is authority for holding the defendant
estopped. (*See also* 7 *Paige*, 68.)   (2.) The case of the *New
York Life Ins. and Trust Co.* v. *Beebe* (3 *Seld.* 364) is not
in point.   In that case the agent was not employed to sell a
negotiable security, but to obtain a loan and deliver the se-
curities for it, which were made payable directly to the plain-
tiff, thus on their face rebutting any presumption that they
were the agent's property, and giving the lie direct to such
allegation.   The agency in this case is not an implied one.

Ferguson *v.* Hamilton.

A direct agency is not only averred by the defendant in his answer, but is found as a fact by the referee. (3.) In this case the representations are made by a partner, in a partnership transaction, disguised under the form of a note, made by one, payable to the other. Both participated in the fraud; both were benefited by it. If Hale is estopped, his partner who enabled him to commit the fraud is estopped also. (*Van Duzen* v. *Howe,* 21 *N. Y. Rep.* 531.) An action for money had and received would lie at the suit of Ladd against both Hamilton and Hale. (*Onondaga Co. Bank* v. *De Puy,* 17 *Wend.* 47. *Reynolds* v. *Cleaveland,* 4 *Cowen,* 282.)

*By the Court,* Bockes, J. The action being at issue was referred by consent of parties to a referee to hear and determine. The referee made his report in the plaintiff's favor, on which judgment was entered. The defendant filed exceptions to the findings and conclusions of the referee, but no case was made. The papers before us are those, only, constituting the judgment roll proper; that is, the summons, complaint, answer, order of reference, report of referee and judgment, with the addition of the exceptions to the referee's report, taken and filed after judgment. There is no case giving a history of the trial and the evidence, or any part of it, with the facts found by the referee and his conclusions of law, rulings and exceptions.

Prior to the act of 1860, a review on appeal from a judgment entered on the report of a referee could not be had without a case made and duly settled. (3 *Kern.* 341. *Id.* 345. 14 *N. Y. R.* 435. 15 *id.* 590. 16 *id.* 610. 16 *How.* 224. 29 *Barb.* 367.) These cases are adverse to and overrule *Brewer* v. *Irish,* (12 *How.* 481.) But since the amendment of section 272 of the code, (*Sess. Laws* 1860, *pp.* 783, 786,) it is supposed the practice is made to correspond with the decision in *Brewer* v. *Irish,* and that a review may be had of a judgment, entered on the report of a referee, on excep-

Ferguson *v.* Hamilton.

tions, as in this case, without the formality of a case, which before was indispensable.

True it was said in *Ingersoll* v. *Bostwick*, decided in December, 1860, (22 *N. Y. R.* 425,) by Wright, J. after referring to the decisions above cited, and as if still adhering to those cases, that several of them hold that a review can only be had on a case, containing conclusions of fact and law, and all exceptions intended to be argued in the appellate court. But no allusion was made to the change effected by the amendment of section 272, adopted in April preceding; and the question then under examination was, whether a review could be had when the "appeal book" contained no exceptions to the rulings of the referee on the trial, or to his conclusions of law as contained in his report. In the case at bar, the "appeal book" contains such exceptions. By the amendment of section 272, the words "not otherwise," to which controlling significance was given in the cases cited, were stricken out, and an addition thereto was made as follows: "When the case on appeal shall have been heard and decided at the general term, upon the report of the referee and exceptions, without a case containing the evidence, the decision may be reviewed in like manner on appeal to the court of appeals." This clearly contemplates a review of the judgment "upon the report of the referee and exceptions, without a case containing the evidence." And what need of a case containing the evidence, if no exceptions are taken during the progress of the trial, and the facts are correctly and satisfactorily proved and stated in the report? In such case an exception, or exceptions to the conclusions of law after judgment pursuant to section 268, will permit the questions to be reviewed.

We are of the opinion that a review of the case on the law may be now entertained on the judgment roll and exceptions as here presented; that no case need be made where the party takes no exceptions during the trial, and is satisfied with the facts found by the referee, and desires only to review his con-

clusions of law thereon, to which conclusions, however, exceptions must in due time be filed and served.

Of course, the facts must stand as found by the referee, and the question will be whether his conclusions of law are correctly deducible from the facts found and stated.

The note on which the action is brought was made by the defendant to Hiram Hale or bearer, and was delivered to Hale to be negotiated for their joint benefit. Hale transferred the note to Lyman Ladd at a usurious rate of interest, and Ladd transferred it to the plaintiff. At the time of the transfer to Hale, Ladd represented that the note was good, given for value, and was then held by him; and Ladd purchased it relying on such representations, and believing it to be a valid, subsisting obligation in Hale's hands. The defendant authorized Hale to negotiate the sale and transfer of the note, for the purpose of raising money with which to pay their joint debts, and Hale applied the money received thereon from Ladd mostly to the payment of such debts, and partly to their individual debts.

The referee found, from these facts, as a conclusion of law, that the defendant was indebted to the plaintiff for the amount of the note, and awarded to him judgment therefor. To this conclusion of law, and to the awarding of judgment, the defendant excepted.

There is no pretense that the note ever had inception until its transfer to Ladd; nor but that it was negotiated to him at an unlawful rate of interest. Consequently it is void for usury, unless the defendant is precluded from insisting on this defense by reason of Hale's assurance to Ladd, at the time of the transfer, that the note was a valid, subsisting obligation in his hands.

Had Hale indorsed the note, and were this action against him as indorser, he would be estopped by those representations from the defense of usury; it appearing that Ladd relied on and was deceived by them. (*Truscott* v. *Davis*, 4 *Barb.* 495, 6. *Clark* v. *Sisson*, 4 *Duer*, 408. *Dowe* v.

*Schutt*, 2 *Denio*, 621.   *Holmes* v. *Williams*, 10 *Paige*, 326.
*Mitchell* v. *Oakley*, 7 *id.* 68.   *Bank of Genesee* v. *The Patchin
Bank*, 3 *Kern*. 316.   *The Merchants' Bank of Brooklyn* v.
*Townsend*, 17 *How*. 569.   *Chamberlain* v. *Townsend*, 26
*Barb*. 611.)   In *Truscott* v. *Davis* the action was brought
to recover the amount of a promissory note made by Robin-
son to the order of Davis, and by him indorsed to the plain-
tiff.   The defense was usury.   It appeared that the note was
lent by the maker to Davis to enable him to raise money.
The plaintiff purchased it of him at a usurious rate of inter-
est.   It also appeared that Davis, at the time of the sale,
represented to the plaintiff in writing that it was a business
note, valid in his hands against the maker.   Judge Sill says,
(*p*. 498,) " The law allows the sale and purchase of business
paper at any price the parties agree upon.   If Davis by his
representations induced the plaintiff to believe that the note
was business paper and under such belief to purchase it, he
cannot be permitted, after entrapping the plaintiff into an
unintentional breach of the law, to make a profit out of his
own falsehood, at the expense of an innocent party.   It would
be a gross fraud, which ought not to be tolerated, much less
sanctioned in a court of justice ;" and he adds, if the plain-
tiff confided in the representations and acted upon them in
good faith, " Davis should not be heard in court to set up
the usury."

The action in *Dowe* v. *Schutt* (*supra*) was upon a promissory
note.   The defense was usury.   The note in suit was given in
part renewal of a former note made by the defendants to one
Southard, and by him transferred to the plaintiff.   Evidence
was given to show that when Southard transferred the note
to the plaintiff, he represented it to be a business note, and
guarantied its payment.   Judge Beardsley, giving the opinion
of the court, said, (*p*. 624,) " But although the first note
may have been unavailable in the hands of Southard, having
been made for his accommodation, still if he represented it to
be business paper, and it was purchased by the plaintiff as

Ferguson *v.* Hamilton.

such, relying upon the truth of that representation, then although the purchase may have been at an usurious rate, yet as between the plaintiff and Southard there would be no usury, and the latter would be bound by his guaranty that the note should be paid."

So Judge Denio says in *The Bank of Genesee* v. *The Patchin Bank*, (3 *Kern.* 316,) that " it has been held that if a note made for the purpose of raising money is negotiated to an indorsee upon a discount greater than the legal rate of interest, by means of a representation by the indorser that it is business paper in his hands, the indorser cannot set up the defense of usury against the indorsee.

Thus it seems settled on authority that the indorser who negotiates the sale and transfer of a usurious note on the representation that it is business paper in his hands, is estopped from insisting on the defense of usury, against the indorsee, or any one claiming title to the note through him.

Judge Gridley, in *Holmes* v. *Williams*, (10 *Paige*, 326,) was inclined to the opinion that a transfer, under such circumstances, was not within the statute against usury; that it was a purchase, and not a loan of money. But he was constrained to yield, as he states, "to the settled doctrine of the court, that such a transaction was usurious." In this case, however, he held that the defense of usury was not available to Holmes, for the reason that he transferred the security on the false representation that it belonged to him and was business paper. The chancellor, on appeal, affirmed the decision, remarking that "the transaction was not usurious as between the vendor and vendee." He should rather have said that, although the transaction was usurious, yet that the vendor under the facts of the case was estopped from setting up the usury as a defense against the vendee.

The doctrine of estoppel *in pais*, as applied to the defense of usury, was attacked by Judge Marvin in his dissenting opinion in *Truscott* v. *Davis*, (4 *Barb.* 499, 500.) He says, with much force, that such an application of the doctrine of

estoppel would go far towards repealing the usury laws; and he protests against the rule recognized and declared by his associates in the decision of that case. I think Judge Denio, too, intends to suggest a doubt as to the propriety of applying the law of estoppel *in pais* to the defense of usury; for while he recognizes the doctrine, he adds, "this is carrying the principle of estoppel to the length of protecting a transaction prohibited by a positive law founded upon considerations of public policy. It is not necessary to affirm that doctrine in this case, for the objection here is not that the transaction itself was unlawful, but only that it was unauthorized in this particular case. I see no objection to applying it to the principle that, where a party has by his declaration or conduct induced another to act in a particular manner, he will not afterwards be permitted to deny the truth of his admissions, if the consequences would be to work an injury to such other person."

It is evident the learned judge purposely refrained from expressing his approval of the doctrine that an estoppel could be urged in protection of a transaction prohibited by a positive law founded upon considerations of public policy. It was held in *Brown* v. *McCune*, (5 *Sandf.* 224,) inapplicable to infants. But in *Davis* v. *Tingle*, (8 *B. Monroe's Ken. R.* 539,) it was held that it extended to infants and *femes covert*. So held, also, in *Barham* v. *Turbeville*, (1 *Swan's Tenn. R.* 437,) as to a minor, in case he has such discretion and intelligence as to enable him to comprehend the effect of his conduct in regard to his legal rights.

The doctrine of estoppel *in pais* is based on principles of morality and good faith. It can be invoked only as a means to prevent the consummation of a wrong or fraud, and it has been well said, can only be used as a shield—never as a sword. It can be employed by such only as themselves act in good faith. Is it therefore available to the usurer? But it is said the indorsee or vendee of a note made to raise money, to whom it is negotiated at an illegal discount on

Ferguson *v.* Hamilton.

representations and assurances by the holder that it is business paper in his hands, becomes an unintentional usurer. Still the law pronounces him a usurer—a party to a corrupt agreement. Can such person bring to his protection a legal principle, based on moral considerations only, and thus give vitality to a transaction which the law pronounces immoral, and condemns? But the subject is not open to discussion in this court. It must be deemed here concluded by authority. The decisions are numerous, to the effect that an estoppel *in pais* may be urged against the defense of usury, as well as against other matters of defense which involve no idea of moral or legal turpitude in the party who invokes its protection. But the matter of estoppel must exist outside the face of the paper. (*Clark* v. *Sisson,* 5 *Duer,* 469. *Same case on appeal,* 22 *N. Y. Rep.* 312.)

It is available, too, against the maker as well as the indorser. (*The Merchants' Bank of Brooklyn* v. *Townsend,* 17 *How.* 569. *Chamberlain* v. *Townsend,* 26 *Barb.* 611. *Roe* v. *Jerome,* 18 *Conn. R.* 138. *Middletown Bank* v. *Jerome, Id.* 443.)

It seems, therefore, that the defendant in this case must be held estopped from his defense of usury, if he can be made responsible for the representations of Hale to Ladd that the note was good, given for value, was held by him, and was a valid, subsisting obligation in his hands.

Had the note been made for Hale's accommodation and been intrusted to him to be negotiated for his sole benefit, it is clear his representations would not conclude the defendant from the defense. (*Truscott* v. *Davis,* 4 *Barb.* 495. *Dowe* v. *Schutt,* 2 *Denio,* 621. *Jackson* v. *Fassitt,* 33 *Barb.* 645.) (*a*) And it has been held that the admission of one of

(*a*) In the case last cited, there appears to be a misprint, which obscures the meaning, or rather, makes the learned judge say what he did not intend to say. The sentence commencing on the 9th line of page 649 should read as follows: "The question in the present case extends further, and is, where the *maker* of a promissory note, or the acceptor of a bill or draft, gives it to the *indorser* or drawer merely to enable him to raise money on it, without any

Ferguson *v.* Hamilton.

two joint contractors, who are not partners, cannot deprive the other of his defense. (*Lewis* v. *Woodworth,* 2 *Comst.* 512.)

The defendant alleges, in the answer, that Hale was his agent in negotiating the note to Ladd, and the facts found by the referee clearly establish that allegation—indeed clearly establish every allegation of fact contained in the answer, with the additional important circumstances that Hale assured Ladd at the time of the transfer, in substance, that the note was valid business paper in his hands. The referee certifies that Hale had authority from the defendant to negotiate the sale and transfer of the note for the purpose of raising money to pay their joint debts, and in fact so transferred it, and applied the money received to the payment of such debts. In all this Hale was the defendant's agent, and acted strictly in pursuance of his authority; hence the defendant was bound, to the extent of those acts. It is a very familiar rule that a principal is bound by the acts and declarations of his agent within the scope of the agency. The question here is, therefore, whether the representations made by Hale, to the effect that the note was valid business paper in his hands, were within the scope of his authority, as agent to negotiate its sale and transfer.

directions or instructions, is he bound by the representations of the *indorser* or drawer that it is business paper?" The sentence in the opinion of Judge Clerke, immediately following the above, shows that this was his meaning.

The 7th paragraph of the syllabus, or head-note, to *Jackson* v. *Fassitt,* should be corrected by striking out "maker" in the 2d and 4th lines, and inserting "indorser," and by striking out "drawee" in the 4th line, and inserting "drawer." That paragraph, though given in the language of the judge, would perhaps be plainer if separated into two propositions; one relative to promissory notes, and the other respecting bills or drafts; thus:

"When the maker of a promissory note gives it to the indorser merely to enable him to raise money on it for his own benefit, without any directions or instructions, he (the maker) is not bound by the representations of the indorser that it is business paper.

So when the acceptor of a bill or draft gives it to the drawer merely to enable him to raise money on it for his own benefit, without any directions or instructions, such acceptor is not bound by the representations of the drawer that it is business paper."                                    REPORTER.

Ferguson *v.* Hamilton.

The defendant authorized Hale to negotiate the note for their joint benefit. He had not limited Hale's powers, except as to the disposition of the avails, and as to which there is no pretense of any violations of duty. Hale was sent forth with what purported to be property, with authority and directions to sell it—not special but general authority. As to that transaction he was clothed with general powers. Consequently, as to that, he was in strictness a general agent. See remarks of Savage, J. in regard to *Fenn* v. *Harrison*, (13 *Wend.* 521.) Besides this, he was part owner of the note in one sense, for it was made to raise money for the joint benefit of himself and the defendant. As to them, and as regards this question, it was the same as a partnership note. In this the case differs from *The N. Y. Life Ins. and Trust Co.* v. *Beebe*, (3 *Seld.* 364.) It also differs from the one cited, in another important particular. In that case the agency was to borrow money, not to sell property, or what purported to be property of value in the agent's hands.

It is decided that an agent having power to sell goods, without express restriction as to the mode, may sell by warranty. (*Andrews* v. *Kneeland*, 6 *Cowen*, 354. *Nelson* v. *Cowing*, 6 *Hill*, 336.) It is laid down as a general rule that when the acts of the agent will bind the principal, then his representations, declarations and admissions respecting the subject matter will also bind him, if made at the same time and constituting a part of the *res gestæ*. (*Story on Agency*, § 134. *North River Bank* v. *Aymar*, 3 *Hill*, 262.) There are numerous cases holding that the principal is responsible for the fraud of his agent, if committed while transacting the business of the principal. (*Sandford* v. *Handy*, 23 *Wend.* 260. *The Bank of the United States* v. *Davis*, 2 *Hill*, 451. *Jeffrey* v. *Bigelow*, 13 *Wend.* 518. *North River Bank* v. *Aymar*, 3 *Hill*, 262. *Nelson* v. *Cowing*, 6 *id.* 336. *Bennett* v. *Judson*, 21 *N. Y. Rep.* 238.) So it is said, by way of example, (*Story on Agency*, § 137,) that what an agent has said or represented at the time of the sale of a horse,

which sale was authorized by his master, whether it be a representation or a warranty of soundness, or of any other quality, will be binding on the master. It cannot be justly said, I think, that the representations in this case were not within the scope of Hale's agency, which was to negotiate a sale and transfer of the note. As was remarked by Nelson, J. (23 *Wend.* 267,) does not a power to sell "imply the right to use the ordinary means and inducements to accomplish the end? Must not the principal expect the agent will speak of the property, its situation, quality, &c."

When a note is offered for sale, what questions are ordinarily put in regard to it? Every prudent man, before purchasing, will inquire whether it is a valid obligation, or business note, and further inquire in regard to the responsibility of the parties to it. Certainly these are elements of value, and are proper to be considered and discussed by the parties, on the negotiation for its sale. In *Fenn* v. *Harrison*, (4 *Durn. & E.* 177,) it was decided to be within the authority of an agent employed to get a bill discounted, to represent or warrant it to be good, and it was said, "as the defendants had authorized F. Hewet to get the bill discounted, without restricting his authority as to the mode of doing it, they were bound by his acts." In *Elwell* v. *Chamberlain*, (2 *Bosw.* 230,) an agent was employed to sell a note, and on the sale made false representations which induced its purchase. Hoffman, J. says, "His authority was to sell the note. What he said or did in relation to such sale was within the scope of his power."

It was consequently within the scope of Hale's agency to represent the note as a business note and valid.

It makes no difference, as to the defendant's liability, that Hale did not disclose the name of his principal. (*Story on Agency*, §§ 267, 419, 420, 446. *Beebe* v. *Robert*, 12 *Wend.* 413. *Hicks* v. *Whitmore*, *Id.* 553. *Taintor* v. *Prendergast*, 3 *Hill*, 72.) The representations of Hale were therefore the representations of the defendant. The case stands the same as if the defendant had been called up at the time the note was

negotiated to Ladd, and on being interrogated by him with a view to its purchase, had assured him that it was business paper, and a valid subsisting obligation in Hale's hands. Clearly, within the cases cited, he would have been ever after bound by his assurances, and would not be allowed to gainsay them to the prejudice of Ladd or of any one claiming title to the note through him.

It is said that if the defendant is responsible for Hale's declarations, then the case is the same as if he should be deemed as representing his own note in his own hands valid and business paper, and that such view of the case presents an absurdity. True, if the defendant had personally offered his own note for sale, his representations that it was valid business paper in his hands would be absurd. But here he makes his note to Hale or bearer, places it in Hale's hands with authority and directions to him to negotiate its sale and transfer.

It is not either impossible or absurd for him now to represent the note as a valid business note.

There is another view of the case which should not be overlooked. The making and transfer of the note is not denied, but the defense is that the circumstances attending its inception and transfer show it to be usurious and void.

But such circumstances also show that the defendant is concluded from this defense, and they must all be considered together, in determining the legal consequences which must result from the transaction. The plaintiff is not at liberty to select and take so much of the transaction as suits his purpose, and reject the rest. If he adopt part he must adopt all the instrumentalities employed by the agent in the performance of the business and duties intrusted to him.

The judgment must be affirmed.

[SCHENECTADY GENERAL TERM, January 7, 1862. *Rosekrans, Potter* and *Bockes,* Justices.]