## STEINHART *vs.* BOKER and others.

The old established rule of law that the holder of bills, bank notes, &c., can give a title which he does not possess, to a person taking them *bona fide* for value, is not to be qualified by treating it as essential that the person should take them with due care and caution; except so far as the want of such care and caution may affect the *bona fides* and honesty of the transaction.

Where a bailee, with whom bank notes were deposited by the owner, transferred and delivered to a third person in payment of his own debt, without authority; *Held* that in an action against the latter, by the owner, to recover the value of the notes, it was erroneous for the judge to charge the jury that a person receiving money in good faith, *where there were no suspicious*

*circumstances attending the receipt*, is not bound to inquire into the title of the party for whom he received it, although it might have been stolen, or acquired in a dishonest way.

APPEAL from an order made at a special term denying a motion to set aside the verdict as against evidence, &c. The complaint alleged that about October 23, 1857, the plaintiff left with Jacob Cohn nine hundred pounds sterling, to be deposited by Cohn with the defendants, for the plaintiff. That Cohn did deposit the same with the defendants for safe keeping, to be paid to the plaintiff on demand. That the plaintiff has demanded the same from defendants, who refused to deliver it. The plaintiff demanded judgment for $4356, with interest from February 3, 1858. The answer specifically denied each and every allegation in the complaint. The facts were these : In October, 1857, one Jacob Cohn owed the firm of John G. & J. Boker, on an account for Hungarian wines sold him, about $5000. He had been dealing with that firm for some time, and had been doing a prosperous business. He had sold the wines bought by him of John G. & J. Boker. He had been in the habit of paying them sums of fifty, one hundred, and two hundred dollars, and had paid them sovereigns, but had not paid them any sums for some months prior to October, 1857. During the spring and summer preceding October, 1857, Cohn had been pressed by the firm of John G. & J. Boker for money, and to pay a larger sum than he had before paid, and he had promised to pay them a large sum on account of his indebtedness. On October 22, 1857, Cohn came to the counting house of John G. & J. Boker—John Boker, Louis Funke, jun. and Charles Grimmer being then there—and exhibiting two Bank of England notes, one for £500 and one for £200, offered them to Funke, one of the firm, saying, here is money for you. Funke told Cohn to get the notes changed, as he owed them dollars not pounds, but Cohn insisted Funke should do that for him; Funke agreed, and told him he should be credited the amount of the notes. Cohn then expressed a wish for a

loan of one or two hundred dollars in a few days. Funke agreed that he should have it. As Cohn was leaving, Boker said to him, jocularly, "Cohn, where did you steal that money?" Cohn replied, "don't speak that way, it is my money." The notes were given to a broker the next day to be exchanged. He sold them and brought to John G. & J. Boker the amount, $3212.22, which was immediately applied to the payment and extinguishment of Cohn's indebtedness to that amount, and entered to his credit in the books of the firm. Within a week or two, at Cohn's request, the amount was entered to his credit on his pass book, by the book-keeper of John G. & J. Boker. In consideration of this payment, and immediatly thereafter, the firm of John G. & J. Boker sold to Cohn more goods on credit, to the amount of eight or nine hundred dollars, and loaned him the sum of two hundred dollars agreed to be loaned at the time of said payment. No part of either of these sums was ever paid, and Cohn owed the firm on January 1, 1858, a balance of $2764.05, which is still due. At the time of the payment by Cohn, nothing was said or intimated about the plaintiff, or any other person, having or claiming any title or interest in the bank notes. Neither Boker nor Funke had any knowledge, information or suspicion, that any other person than Cohn owned or claimed the notes or was interested in them. About the 10th or 11th of October, 1857, the plaintiff, then being in prison in this city, gave to one Abraham Lyons three Bank of England notes, one for £500 and two for £200 each. Lyon held them, and out of them made disbursements for and by direction of the plaintiff, until he delivered two of them to Cohn. About October 22, 1857, the plaintiff said to Lyon, in the presence of Cohn, "Give Cohn that money." Shortly after Lyon gave to Cohn one £500 note, and one £200 note. No receipt or other writing was made. The plaintiff had before this occurrence boarded at Cohn's house, and had become indebted to him for wines, provisions, &c., services rendered and money loaned. His indebtedness to

Steinhart *v.* Boker.

Cohn for these and similar considerations, continued and increased after the notes were delivered to Cohn. On December 2, 1857, plaintiff wrote a receipt, took it to Cohn to sign; Cohn signed it, and added the words, " To be returned February 2, 1858." The receipt was as follows : '·Certificate of deposit of £700, say seven hundred pounds of sterling in two notes on the Bank of England, which I have received as deposit from Mr. Abraham Lyons by order and on account of Mr. Israel Steinhardt, and I promise to return said deposit in natura (—i. e. in an article of the same generic nature—) to its owner Mr. Israel Steinhardt, or his order, without any objection. JACOB KOHN." To be delivered February 2d, 1858. On December 10, 1857, plaintiff and Cohn came to the cellar 83 Water street, and deposited the receipt with one F. X. Hazman for safe keeping. Hazman put it in a box at his house, where it remained until he took it from there on the second February, 1858, and delivered it to the plaintiff. Neither of the defendants or Funke ever saw or heard of this receipt until after the commencement of this suit. A few days before February 2, 1858, the plaintiff came to the cellar 83 Water street, and inquired of Hazman whether Cohn was responsible for the money he owed the plaintiff. The plaintiff came to the counting house of the defendants' firm, in February, 1858, with another person, who inquired if Cohn had left three notes there. He was informed what had occurred. No demand for them was made. Some time prior to February 13, 1858, the plaintiff commenced an action against Cohn for the recovery of the nine hundred pounds and a gold watch, alleging that he deposited them with Cohn for safe keeping, and that the latter converted them. Cohn was arrested in that suit. By the pleadings in that suit, duly verified, the plaintiff denied that he had given the bank notes to Cohn to be deposited with these defendants. That suit has been dismissed or suspended. The plaintiff, at the time of the commencement of this action,

Steinhart *v.* Boker

was indebted to Cohn in a large sum for board, wines, segars, money loaned, services rendered, &c.

. The action was tried at the New York circuit in November, 1859, before Justice STRONG and a jury.

At the close of the testimony the defendants' counsel moved to dismiss the complaint as against both these defendants. 1. Because no contract whatever between the plaintiff and defendants was proven. 2. Because the proof showed that Cohn occupied the position of a simple debtor to the plaintiff, for the amount or value of the bank notes in question, and was invested with no special trust in regard thereto. 3. Because in no view of the testimony were the defendants liable to the plaintiff, for any amount.

His honor the justice denied the motion; and the defendants' counsel excepted. The defendants' counsel then moved to dismiss the complaint as against the defendant John G. Boker, or that said defendant be discharged from the suit, for that no cause of action whatever against him was proven.

His honor the justice denied the motion, and the defendants' counsel excepted.

The justice, among other things, charged the jury that if the defendants, when these notes were delivered to them, were not informed by Cohn of the plaintiff's rights; if Cohn delivered them, as the defendants testified, to be sold and the proceeds credited in his account; if the jury were satisfied, from the evidence, that the notes were delivered to the defendants under such circumstances as would induce a suspicion in a man of ordinary prudence, or a business man, in respect to the right of Cohn to the notes, and to deal with them in that manner, it was the duty of the defendants to make inquiry with respect to the plaintiff's title to them; and if they omitted to make such inquiry, which, if they had made, would have led to a discovery of the truth of the case, (of the plaintiff's right,) and they took these notes and disposed of them in that manner, they are chargeable by the law for the notes as if the actual notice were given to them;

Steinhart *v.* Boker.

and the sale of them was in violation of the plaintiff's rights, and. entitled the plaintiff to call upon them for their full value. That it was claimed on the part of the plaintiff, that there were such circumstances, and it would be for the jury to look into the evidence carefully with respect to the dealings between Cohn and the plaintiff, and before adopting the conclusion that there were suspicious circumstances attending the receipt of these notes by the defendants, the jury should be entirely satisfied by the evidence that such circumstances existed. But if they were thus satisfied that here were such circumstances as would excite suspicion in men of common prudence, then it was the duty of the defendants to make inquiry, and if they omitted to do so when they could have ascertained the truth, they were chargeable with knowledge, and the case was the same, with respect to the plaintiff's rights, as if such knowledge had been communicated in express terms. To this portion of the charge the defendants' counsel excepted. The judge further charged that another question in the case related to the right of the defendants to sell these notes and apply the proceeds on Cohn's account, upon the assumption that the plaintiff was the owner at the time these notes were received by the defendants. That whichever of these men, the plaintiff or Cohn, was the owner of these notes at the time they were delivered to the defendants—if they were delivered to the defendants to be exchanged, and the proceeds to be credited to Cohn, and the defendants received these notes in good faith, and in ignorance of the rights of any other person, and as a payment upon Cohn's account, and they sold the notes and made this credit—then the sale by the defendants was legal, and this payment upon the account was a valid payment, and the rights of the plaintiff to the notes, if he held them, were lost. That this was upon the principle, in case of money, and bank bills, and negotiable paper of any kind, that it is the policy of the law that it should have an unrestricted circulation. That persons receiving paper of that character should be able to do so with

safety, and without the liability to have their rights questioned at any subsequent time. That is, a person receiving money in good faith, when there are no suspicious circumstances attending the receipt, is not bound to inquire into the title of the party from whom he received it, although it may be stolen, or may be acquired in a dishonest way. The defendants' counsel excepted to this part of said charge, to wit : "Where there are no suspicious circumstances attending the receipt." The defendants' counsel requested his honor the justice to charge the jury as follows : 1. If the jury believed that Cohn paid to the defendants the proceeds of the bank notes, in part payment of his debt to them, and the same were so received by the defendants, and credit given to Cohn therefor, and at that time the defendants had not actual notice of any right or title of the plaintiff or other person in or to such money, the plaintiff cannot recover. 2. That if the jury believed that Cohn paid to the defendants, and they accepted from him the bank notes themselves in payment of a part of his debt to them, without any such notice of any claim, title or right of the plaintiff, or other person in or to them, the plaintiff cannot recover. 3. That it is a legal conclusion from the testimony on that subject, that the relation of Cohn to the plaintiffs, so far as respects these bank notes, was that of a simple debtor. His honor the justice declined so to charge, otherwise than as he had before charged on that subject; and to such refusal the defendants' counsel excepted.

The jury returned a verdict for the plaintiff for $3678.17, and the court made an allowance of $100 to the plaintiff.

*N. B. Hoxie,* for the appellant.

*Beebe, Dean & Donohue,* for the respondents.

*By the Court,* INGRAHAM, J. The question in this case is whether a party who takes a note in the usual course of bu-

Steinhart *v.* Boker.

siness, and gives value for it, is bound also to make inquiry as to the title to the note, if there are circumstances of suspicion attending the receipt of it, or if the person taking it is guilty of negligence by which he is led to take it, when due diligence would have informed him of the defect of title.

In *Raphael* v. *The Bank of England*, (33 *Eng. Law and Eq.* 276,) it was held that the title of a person to a note received in good faith and for value could not be impeached for negligence. In that case notice of the note having been stolen had been left at the plaintiff's office, but had not been seen by him. (*Goodman* v. *Harvey*, 4 *Ad. & El.* 870.)

Mr. Justice Allen, in *Hall* v. *Wilson*, (16 *Barb.* 550,) says, quoting from Lord Denman, "Gross negligence may be evidence of *mala fides*, but is not the same thing." And he adds, "where the bill has passed to the plaintiff without and proof of bad faith in him, there is no objection to his title. In the absence of bad faith in the holder, if he is in other respects within the rule established for the benefit of commercial paper, his title will be upheld."

In *Davis and others* v. *McCready and others*, (17 *N. Y. Rep.* 230,) the note was taken with knowledge of the purpose for which it was made, but without knowledge of a failure of that consideration. DENIO, J. held that though the plaintiffs had such notice, they were not required to see whether the payees had performed their agreement; and he adds, "a party receiving a bill is not put upon inquiry, unless circumstances of suspicion have come to his knowledge."

The old established rule of law that the holder of bills, &c. can give a title which he does not possess, to a person taking them *bona fide* for value, is not to be qualified by treating it as essential that the person should take them with due care and caution; but the person taking them *bona fide* for value has a good title, though he take them without care or caution; except so far as the want of such care and caution may affect the *bona fides* and honesty of the transaction. (*Porter* v. *Pearson*, 1 *C., M. & R.* 849. 5 *Tyrw.* 870. *Goodman*

v. *Harvey*, 6 *N. & M.* 372.   4 *Ad. & El.* 870.   *Goodman* v. *Simonds*, 20 *How. U. S. Rep.* 363.)   The judge erred in his charge on this point.

Judgment reversed and new trial ordered; costs to abide the event.

[NEW YORK GENERAL TERM, May 6, 1861.   *Clerke, Gould* and *Ingraham*, Justices.]