THE MARINE BANK OF THE CITY OF NEW YORK, Respondents, v. NELSON CLEMENTS, Appellant.

The facts that a negotiable note is payable to an insurance company, and is indorsed by its president, and presented for discount only three days before its maturity, are not of a character to require the party discounting such note to make inquiries into the manner in which the party presenting it for discount obtained it, when notes of the like character and indorsement have frequently been discounted in the like manner, for the benefit of the insurance company.

A uniform practice by such company, for a period of several months prior to the transfer of the note in suit, of raising money upon its notes, upon the indorsement of its president for the purpose of passing title, may be given in evidence to the jury, and will warrant the jury in finding that the indorsement of the note in suit was upon sufficient authority to make it binding in favor of plaintiffs.

To make the transfer of a note by an insolvent corporation void in the hands of a *bona fide* holder for value, it must appear that the transfer has been made, not only when the corporation was insolvent or contemplating insolvency, but also with intent of giving a preference to a particular creditor, &c.

Appeal from judgment of Superior Court of New York, affirming a judgment in favor of the plaintiffs.

The action was upon a subscription note for $1,000, made by the defendant to the International Insurance Company, and of which the plaintiffs claimed to be the holders. The answer set up that the note was indorsed to the plaintiffs without authority; that it was assigned by the president of the insurance company, with others of its effects, amounting to over one thousand dollars, without any previous resolution of the board of directors; and that the company was then insolvent, and that the assignment was made to a creditor of the company, with intent to prefer him to its other creditors; and that the plaintiffs, if they ever became holders of the note, became so with notice, &c.

The case was tried on these issues, before WOODRUFF, J., and a jury, on the 27th January, 1859.

It appeared in evidence, that the note on which the action was founded, together with other assets of the insurance company, amounting in the aggregate to $5,002.50, was

transferred by its president to McCready, Mott & Co., on the 8th day of May, 1856, as collateral security for a loan of $3,500, made by that firm to the company, on that day, at a rate of interest of 24 per cent per annum.

The company executed its stock note for this loan of $3,500, pledging the above mentioned assets as collateral.

There was no previous resolution of the board of directors authorizing this loan, or the transfer of this note and the other assets.

It was conceded upon the trial, that this loan and stock note were invalid, and the only questions, therefore, that arose upon the trial, were: 1. Whether the plaintiffs were chargeable with notice of the invalidity of the transactions; 2. Whether the company was insolvent, when the note was transferred, and whether the transfer was made with intent to give McCready, Mott & Co., a preference over the other creditors of the company; and, 3. Whether the president had authority to transfer the note.

The material facts relating to the question of notice, are as follows: The note shows, upon its face, that it originally belonged to the assets of the International Insurance Company.

Fish purchased the note of McCready, Mott & Co., on the 12th of August, 1856, and had notice at the time, that they held it as collateral security for a loan made by them to the insurance company; on the next day (the 13th), the first of the three days of grace allowed for the payment of the note, Fish, being then a director of the plaintiffs, presented it to the president and cashier of the bank, and requested them to pass it to the credit of his firm, which was done. Fish did not indorse the note. The president asked if Clements was good. About the time the note fell due, the president asked Fish to pay it. Fish replied, "Sue the maker of the note; if you cannot get it of him, look to us."

The facts proved upon the question of insolvency were: That about the end of January, 1856, when Ogden, the vice-president, took charge of the affairs of the insurance company, he found a considerable amount of notes deficient, and

"that they were in the hands of Mr. Avery, former president, on account of which he claimed as charter expenses, fixed by the financial committee at $25,000;" that the absence of these notes compelled him to make constant negotiations to raise money, and to pledge collaterals, frequently to double the amount of the loans, but that he did not have to postpone any claims against the company until about May 1st, 1856. On the 16th June, 1856, all payments were stopped by an injunction, at the suit of a stockholder, which was soon after vacated. That about the 7th July, 1856, an injunction was served at the suit of the attorney-general, the company went into the hands of a receiver; and that "on the 8th day of May, 1856" (the date of the loan by McCready, Mott & Co.), "if the losses that had then occurred had been known in the company, the probability is, that the company's assets could not have paid them."

In this connection, the defendant offered to prove by the receiver, that he had got into his possession all the assets of the company, so far as he had been able to ascertain and reach them; that those assets were not worth over $500; that the undisputed liabilities exceeded $92,000; that among the assets were $60,500 in notes of different parties, made payable at different banks; that none of these parties were known at these banks, and that he could not ascertain the residence or existence of any of them except one, and he was totally irresponsible.   This evidence the court excluded.

After the evidence was concluded, the defendant's counsel requested the court to give to the jury certain instructions contained in the case.   To prevent the giving of these instructions, the plaintiffs' counsel stated to the court that he rested his claim to recover, "not upon the validity of the loan of the $3,500 and of the stock note, but on the facts that the plaintiffs are *bona fide* holders of the note in suit, for value, and that the indorsement is proved to have been so made; that the company is bound thereby to the plaintiffs, although it be conceded that the stock loan was not authorized nor valid; and that it is proved that notes were from time to time indorsed by the president of the company, and

that loans were made by negotiating such notes, and that this note was indorsed and transferred in the only mode in which the company ever negotiated the note."

The court then, after stating certain facts conceded by the counsel, being in substance those hereinbefore stated, and also the following: that the note in question passed by successive transfers from McCready & Co. to the plaintiffs; that the plaintiffs received such note and discounted the same in the regular course of its business, three days before its maturity, gave to the jury the following instructions, each of which was excepted to by the defendant's counsel:

" That the circumstances proved do not amount to notice to the plaintiffs of the circumstances under which McCready, Mott & Co. received the note, however invalid the loan made by them was, as in fact it is conceded to have been.

" That, if they should find that for a succession of several months prior to the transfer of this note by the company, it was the usage of the company to borrow money for the purposes of its legitimate business, and negotiate its notes for the purpose of raising money for such purposes, and the moneys so borrowed were so used, and such notes, when negotiated, were uniformly indorsed in the same form as the note now in question was indorsed, that is evidence enough to warrant the jury in finding that the indorsement of this note was by sufficient authority to make it binding in favor of these plaintiffs, so as to give them title to this note, so far as such authority is in question."

Each of these instructions was separately excepted to.

The judge refused to submit to the jury the question, whether the company was insolvent when the note was transferred by the company.

And to such refusal the defendant's counsel excepted.

The jury found a verdict for the plaintiffs for the amount of the note in suit, with interest, $1,169.

And in pursuance of a direction to find specially upon the facts next mentioned, which direction was given by request of the respective counsel, the jury also found specially:

1. That the plaintiffs are *bona fide* holders of the note in

suit, for value paid in due course of business before the maturity thereof, and without any notice of the circumstances under which the note was transferred to McCready, Mott & Co., or of any want of authority in the president of the company to indorse the note for the company, or of other facts impairing its validity.

2. That the president of the company had authority to indorse and transfer the note in the manner and form in which it was indorsed.

The court thereupon ordered, that the defendant's exceptions be heard in the first instance at the General Term, and that the judgment be in the meantime suspended.

Judgment having been rendered at the General Term in favor of the plaintiff, the defendant appealed to this court.

*J. L. Jernegan,* for the appellant.

*First.* The court erred in instructing the jury that the circumstances proved did not amount to notice to the plaintiffs of the circumstances under which McCready, Mott & Co. received the note.

I. I cannot better express a part of the grounds on which I believe this instruction to be erroneous, than in the language of the learned chief justice who delivered the opinion at General Term: "I cannot resist the conclusion that the facts tend to show, though not at all conclusively, that the plaintiff's officers who passed this note to the credit of the firm of which Mr. Fish was a member, had reason to believe, and that it is not improbable they did believe at the time, that the whole object in procuring a formal discount of the note was to make the plaintiffs apparent indorsers for value, and thus discourage an attempt to defend a suit brought by them, when one would be attempted to a suit brought by Fish.

"The evidence does not disclose that the firm of Mr. Fish had any present use for the money passed to their credit, or that they have not at all times since had on deposit a larger sum to their credit in the bank than the nominal proceeds of the discount of the note. The accommodating conduct of

the bank in suing Clements and forbearing to sue Mr. Fish, furnishes some evidence in favor of this view."

II. The note bearing upon its face the evidence that it had been transferred by the International Insurance Company, and that it originally belonged to that company; that was sufficient notice to put the plaintiffs on inquiry, and to prevent their setting up the want of notice.

1. In *Smith* v. *Story* (2 Hill, 241, 245), which was an action by indorsees against indorsers of a bill, in which the defendants set up that the bill was illegal and void, as having been issued in contravention of the act of 1840, prohibiting the issuing by associations formed under the general banking law, of any bill or note not payable on demand, the court held, that the fact that it appeared on the face of the bill that it was issued by a bank, was sufficient to put the holder upon inquiry whether the bank was organized under that law, and was therefore sufficient evidence of notice to him of the illegality of the bill.

2. That such notice as will put the party on inquiry is sufficient, I presume will not be disputed. (*Brewster* v. *McCardell*, 8 Wend., 478; *Geffcken* v. *Slingerland*, 1 Bosw., 449; *Woodruff* v. *Wicker*, 2 id., 613; *Williamson* v. *Brown*, 15 N. Y., 354.)

3. The interest of the plaintiffs is identical with that of Fish, from whom they obtained the note, and who is chargeable with notice. The plaintiffs have no real and substantial interest in the result different from that of Fish; notice to Fish is notice to them; and to permit him to protect himself from the consequence of notice under the *nominis umbra* of the bank, would be to sacrifice the substance to the form of law. (*Lewis* v. *Cosgrave*, 2 Taunt., 2.)

4. The General Term, while conceding that the above facts should have been left to the jury as evidence of notice, affirmed the case on this point, on the ground that the case did not assume to set out all the instructions, and that they would presume "that the instructions pertinent to a proper disposition of the special question first submitted, were given and were satisfactory to both parties."

No such objection was made by the plaintiffs' counsel in the argument before the General Term, and we submit:

(1.) That it appears from the case, that it contains all the instructions of the court on the question of notice. The words are, "The judge thereupon stated the foregoing concessions to the jury, and among other things, instructed them: Upon the question whether the plaintiffs were *bona fide* holders of the note in question for value paid before maturity without notice; that" (here follows the instruction;) "And upon the question, whether the transfer of the note was made by sufficient authority, the judge charged the jury" (here follows the instruction on that point.) The whole context shows that the words "among other things," were intended to, and do relate to instructions connected with other parts of the case, and not to instructions connected with the specific points mentioned.

(2.) The instruction on the subject of notice entirely withdraws from the jury the question of fact; under that instruction, they could not take into consideration any of the facts proved on this subject; and no modification or even contradiction of it could prevent its misleading effect upon the jury, so long as it remained as an obligatory direction upon them, and was not entirely withdrawn.

(3.) No authority has been cited, nor, after a pretty extended examination, have I been able to find any, to sustain the position, that where an instruction is clearly erroneous, and it appears that the whole charge is not set out in the case or bill of exceptions, the appellate court will presume that that part of the charge not set out, contained something to relieve the instruction excepted to, from error.

On the contrary, in *Carver* v. *Jackson ex dem. Astor et al.* (4 Peters, 1, 80, 81), Mr. Justice STORY condemns the practice of setting out the whole charge, and observes that the exception should be strictly confined to the misstatement of law complained of. And the case of *Davis* v. *The State* (17 Ala., 415), is an express authority for the position that if a bill of exceptions states enough to put the court clearly in error, the court, if consistent with the facts, should insert

enough to put itself right, and, if it fails to do so, no presumption can be indulged in support of its judgment.

*Second.* The court erred in refusing to submit to the jury the question whether the company was insolvent when the note was transferred by the company.

I. Because the defendant was entitled to show that the transfer of the note was void under the 8th section of the act to prevent the insolvency of moneyed corporations.

II. McCready was a creditor of the company previous to and at the time of the transfer of the note, and therefore, both within the letter and the spirit of the statute.

1. Within the letter, because he became a creditor at the moment when the company executed to him its note for the money loaned. It was to secure this debt that the collateral notes were transferred; and it makes no difference whether he was a creditor of six months, one month, one week, one day, or ten minutes standing, he was still a creditor of the company, and the transfer of the notes gave him a preference to other creditors.

2. Within the spirit, because:

(1.) If not, it is within the power of such corporations wholly to avoid the effect, and defeat the policy of the statute. The company may receive advances from a creditor whom it intends to prefer, and secure his advance by the transfer of any amount of its assets as collateral, or the whole assets of the institution may be frittered away by disposing of them as collateral securities for loans, from which the company may not receive half the value of the securities themselves. The remarks of several of the judges in *Curtiss* v. *Leavitt* (15 N. Y., 9), to the effect that the transfer of assets to secure new advances, is not within the statute, are mere *dicta*, and are even as such, limited to cases where the money " is actually appropriated to the uses of the company in the prosecution of its legitimate business."

(2.) Because the object of the statute, as judicially declared by the Court of Appeals, is to declare " the absolute right of every creditor to share *pro rata* in the assets of the company," and not to "suffer this right to be defeated by any

act of the corporation or its officers." (*Brouwer* v. *Harbeck*, 5 Seld., 589, 593.) That right can obviously never be protected, if transactions like the present are to receive legal sanction.

III. The company having been insolvent at the time of the transfer, it is not necessary to bring home to the plaintiffs knowledge of that insolvency, as the transfer is absolutely void. (*Brouwer* v. *Harbeck*, 5 Seld., 589, 593.)

IV. The defendant had the right to show the insolvency of the company, in order to test the question, whether or not the transfer of the note to secure a loan, at a rate of interest of twenty-four per cent, when the company was in a state of insolvency, was "in the course of their business," within the meaning of the 12th section of their charter.

V. The evidence offered to prove the insolvency of the company, was material and competent, and the court erred in excluding it.

*Third.* The court erred in the instruction relating to the authority of the president to transfer the note.

I. In the consideration of this question, two important elements are to be taken into account: 1st. That the loan, to secure which the note in question was given, was invalid, and so conceded to be on the trial, and, consequently, the original indorsement of the note by the president was an invalid act; 2d. That the indorsement shows upon its face, that it was made by an agent, the president of the company.

II. Hence it was necessary for the plaintiffs, before they could recover, to prove not only that the president was authorized to indorse notes for his principal, the company, but that this note was, in fact, indorsed in the legitimate business of the principal, and for the principal's benefit; in other words, that the president not only had the apparent authority to indorse the note, but that the indorsement was actually made for the benefit, or in the legitimate business of the company. (*Exchange Bank* v. *Monteath*, 24 Barb., 371; *Mechanics' Bank* v. *N. Y. & N. H. R. R. Co.*, 3 Kern., 599.)

III. The instruction of the court, therefore, that evidence that it was the usage of the company for several months

prior to this indorsement, to borrow money for its legitimate business, and to negotiate its notes for the purpose of raising money for such purposes, and that such indorsements were in the same form as the one under consideration, was sufficient evidence of the authority of the president to indorse this note, was erroneous. Such evidence was sufficient evidence of the general authority of the president to indorse notes in the course of the legitimate business of the bank, but no evidence of the authority of the president to make an indorsement conceded to have been beyond the scope of such legitimate business.

IV. I submit that the above cited cases are authority for the position, that in such cases the evidence must go further, than merely to show a general authority of the agent to indorse notes; the party seeking to recover when he has notice of the fact, that the indorsement is by procuration, must also show that it was made in the course of the legitimate business, and for the benefit of the principal.

V. The case of *Farmers' and Mechanics' Bank of Kent Co.* v. *Butchers' and Drovers' Bank* (16 N. Y., 125), is not inconsistent with this position. That case held the bank, whose check was certified by its teller, liable for the amount of that check, on the ground that the bank was bound by the false representation of its agent, the teller, and that the certificate was a representation that the drawer of the check had that amount of funds in bank. But here, there was no representation whatever by the president, either express or implied.

*Waldo Hutchins*, for the respondents.

Action to recover the amount of a promissory note, made by defendant, dated August 14, 1855, for $1,000, payable twelve months after date, to the order of the International Insurance Company.

The note, before it became due, was discounted by the plaintiffs in the regular course of business.

The note in question was a subscription note for premiums in advance, and as such was made and delivered to the International Insurance Company.

I. The note in suit was given upon a good and sufficient consideration, was used by the International Insurance Company in the course of its business, and in a manner authorized by its charter. (Sess. Laws, 1844, ch. 156; id., 1855, ch. 295.)

II. The proceeds of the note, on the discount of it, were paid to the said company in cash. By receiving and applying the same in their business, the company ratified the acts of its agents in procuring the money on the note.

III. But the plaintiffs in this suit are the *bona fide* holders of the note, for value taken before the same became due, in the regular course of business, and without any notice of a defense to the same, either legal or equitable, on the part of the defendant. Under these circumstances, the plaintiffs are entitled to judgment. (1 Sandf. S. C., 165.)

HOGEBOOM, J. I am of opinion that there was no valid exception to the instruction of the court, that the circumstances proved did not amount to notice to the plaintiffs, of the circumstances under which McCready, Mott & Co. received the note. This was a question of fact which the defendant's counsel did not ask to have submitted to the jury, and upon which, without such request, he is concluded by the finding of the judge. Having allowed the judge to be substituted in the place of the jury on that question, and there being evidence to sustain the conclusion at which the court arrived, the matter of fact involved therein is not the subject of exception, nor reviewable in a court which passes only on questions of law. I have expressed my opinion on this question in a reported case, *Davis* v. *Rush* (28 Barb., 180), and refer to the cases there quoted to sustain it. (*Jackson* v. *Packard*, 6 Wend., 415; *Jackson* v. *Zimmerman*, 12 Wend., 299; *Barnes* v. *Perrine*, 2 Kern., 22, 23; *People* v. *Cook*, 4 Seld., 78; *Beekman* v. *Bond*, 19 Wend., 444; *Hunter* v. *Trustees of Sandy Hill*, 6 Hilt., 410.)

Moreover, the question appears, after all, to have been submitted to the jury, and at the request of the respective counsel they found specially upon it, and such finding was,

that the plaintiffs were *bona fide* holders of the note in suit for value paid in due course of business, before maturity and without notice of any circumstances to affect its validity or throw suspicion upon it. It is said that this question was submitted to them under the instruction before mentioned; but if the question was submitted to them, then there was no positive and absolute direction to them on the subject, and nothing more than the holding of the judge on the question of fact.

But if the question be an open one and the exception proper for consideration, I am of opinion that there was no error in the instruction. The note was presented for discount in the usual way. Very shortly before maturity, it is true, but that was not unusual with the plaintiffs, and is not, I think, a circumstance which obliges a party to refuse discount without minute inquiry into the circumstances under which the holder, who offered the note for discount, obtained it. The only other circumstance calculated to cast suspicion on the note is the fact that it was made payable to an insurance company. I am not prepared to require a bank which discounts paper, otherwise unobjectionable, from that single circumstance alone, to institute cautious inquiries as to its origin and history before it ventures to discount paper of that description at the peril of being deemed *mala fide* holders of the paper. (*Babcock* v. *Beman*, 11 N. Y., 300; *Bank of Genesee* v. *The Patchin Bank*, 19 N. Y., 312; *Paush* v. *Wheeler*, 22 N. Y., 494; *Thompson* v. *Tioga R. R. Co.*, 36 Barb., 80; *Buffett* v. *Troy and Boston R. R. Co.*, 36 Barb., 427; *Steinhart* v. *Baker*, 34 Barb., 436; *Davis* v. *McCready*, 17 N. Y., 230.)

Moreover, in this case it was expressly conceded by counsel, "that said plaintiffs received such note and discounted the same in the regular course of its business, three days before its maturity." This is nearly or quite equivalent to saying that it was a *bona fide* holder for value.

There was no error in the charge that a uniform practice of the company for a succession of several months prior to the transfer of this note, in case of notes negotiated for the

purpose of raising money to carry on its legitimate business, where such notes were payable to the company, to have them indorsed by its president for the purpose of passing the title, would warrant the jury in finding that the indorsement of this particular note was by sufficient authority to make it binding in favor of these plaintiffs.

The fact of such uniform practice would, it would seem, abundantly justify an inference of competent authority for such a purpose; and the proposition, I think, is abundantly warranted by adjudicated cases. (*Farmers' and Mechanics' Bank of Kent Co.* v. *Butchers' and Drovers' Bank*, 14 N. Y., 634; 16 N. Y., 125; 20 How. U S., 345; 34 Eng. L. & E., 131; *Bank of Genesee* v. *Patchin Bank*, 3 Kern., 318.) See, also, the case of *Wood* v. *Wellington*, decided in this court at the June Term, 1864.

There was no error in refusing to submit to the jury the question whether the company was insolvent at the time of the transfer of this note by the company. The question was immaterial. To make the note absolutely void, even in the hands of a *bona fide* holder for value, it was necessary that the transfer should have been made, not only when the institution was insolvent or contemplating insolvency, but with the intent of giving a preference to a particular *creditor* over other creditors of the company. (1 R. S., 591, § 9; *Brouwer* v. *Harbeck*, 5 Seld., 589, 593.) The preference must therefore be to a creditor — to an existing creditor; the act of transfer must be to one to whom the company is owing a duty, and who is unjustly preferred over others to whom it owes the same duty. The reason of the provision does not apply to one who only becomes for the first time a creditor by the very act of transfer, and for which the company receives an ample consideration paid at the time. The question is, however, decided. (*Curtiss* v. *Leavitt*, 15 N. Y., 112, 142, 175.)

This disposes of all the questions raised in the case, and the result is that the judgment must be affirmed.

DAVIES, J. This action is prosecuted to recover the amount of a promissory note made by the defendant, dated New York, August 14, 1855, for the sum of $1,000, payable,

twelve months after date, to the order of the International Insurance Company, at the Bank of Commerce, in New York. The note was indorsed, "For International Insurance Company, Alanson Marsh, President." The jury found a verdict for plaintiff, and specially:

1. That the plaintiffs are *bona fide* holders of the note in suit for value paid, in due course of business, before the maturity thereof, and without any notice of the circumstances under which the note was transferred to McCready, Mott & Co., or of any want of authority in the president of the company to indorse the note of the company, or of other facts impairing its validity.

2. That the president of the company had authority to indorse and transfer the note in the manner and form it was indorsed.

Upon the trial the following facts were agreed upon by the counsel of the respective parties:

1. That the note in question was a subscription note, and as such was made and delivered to the International Insurance Company.

2. That in the month of January, 1856, Alanson Marsh, the then president of the said insurance company, in his official character, as such president, placed his indorsement upon such note with a view to negotiating the same for such company. That after such indorsement the said note was again returned to and remained with said company, as the holder thereof, until passed to McCready, Mott & Co., as hereinafter stated.

3. That on the second day of February, 1856, the said Marsh ceased to be president of such company.

4. That Moses Starbuck became the president of such company in the place of said Marsh. That said Starbuck, while being such president, and assuming to act as such, negotiated said note so indorsed to McCready, Mott & Co., who loaned said company the sum of $3,500, taking at the same time from said president a stock note of the company therefor, together with the note in question and other notes to the aggregate of about $5,000, held by such com

pany as collateral security for such loan.   There was no note of the board of directors, authorizing the above loan, or the giving of such collaterals.

5. That the note in question passed by successive transfers from said McCready, Mott & Co. to the plaintiffs.   That the said plaintiffs received such note and discounted the same, in the regular course of its business, three days before its maturity.   The judge thereupon charged the jury, that upon the question whether the plaintiffs were *bona fide* holders of the note in question, for value paid before maturity without notice, the circumstances found did not amount to notice to the plaintiffs of the circumstances under which McCready, Mott & Co. received the note, however invalid the value made by them was, as in fact it is conceded to have been.   To this instruction the defendant's counsel excepted.

And upon the question whether the transfer of the note was made by sufficient authority, the judge charged the jury that if they should find that for a succession of several months prior to the transfer of this note by the company, it was the usage of the company to borrow money for the purposes of its legitimate business, and negotiate its notes for the purpose of raising money for such purposes, and the moneys so borrowed were so used, and such notes when negotiated were uniformly indorsed in the same form as the note now in question was indorsed, that the same is evidence enough to warrant the jury in finding that the indorsement of this note was by sufficient authority to make it binding in favor of the plaintiffs, so far as such authority is in question.   And to this instruction the defendant's counsel also excepted.

The judge refused to submit to the jury the question whether the company was insolvent when the note was transferred by it, and to such refusal the defendant's counsel also excepted.

The exceptions were directed to be heard, in the first instance, at the General Term, which overruled the same, and gave judgment for the plaintiffs on the verdict, and the defendant now appeals to this court.

Upon the first exception to the judge's charge, that the circumstances proved were insufficient to bring home notice to the plaintiffs of every defect of the plaintiffs' title, it is to be observed that the force of this charge and of the exception is destroyed by the finding of the jury on the question of fact submitted to them, namely, that the plaintiffs were *bona fide* holders of the note for value, paid in due course of business, before maturity, without any notice of the circumstances attending its transfer to McCready, Mott & Co. The charge of the judge upon these questions submitted to the jury are omitted from the case, and therefore are to be assumed to be unexceptionable. If, however, we are to regard what was said by the judge in the light of an instruction to the jury, upon the first question of fact submitted, it would appear that other things were also said to them, and the inference might well be, that the jury were governed by what was thus omitted, in coming to the conclusion which they arrived at on the first question submitted. In the examination of the testimony, I cannot discover that Fish, who transferred the note to the plaintiffs, had any notice of the circumstances under which McCready, Mott & Co. obtained the note. If his testimony is to be credited, and I see nothing to contradict it, he purchased the note in good faith and for a valuable consideration. I do not see that he had any notice of the circumstances under which McCready, Mott & Co. obtained it, or any circumstance which should have put him on inquiry. At any rate, if Fish was not a *bona fide* holder, it does not follow that the plaintiffs were not. They discounted the note before maturity, in the usual course of business, and passed the proceeds to the account of J. D. Fish & Co. It does not appear whether this amount had been drawn from the bank by that firm; but the usual course of business being to draw moneys from the bank standing to the credit of its customers, it is a natural inference that the money was drawn in the present instance. The facts disclosed do not indicate that the plaintiffs had any knowledge of the circumstances under which McCready, Mott & Co. received the note, or

that anything was disclosed that should have put them upon inquiry.

In any aspect, therefore, I see no reason for holding that the first exception to the charges can be sustained.

The jury having found that the plaintiffs were *bona fide* holders of the note, their title is not impaired by the want of a resolution of the board of directors of the company, authorizing its transfer, as required by the eighth section of the Revised Statutes, relating to moneyed corporations. (1 R. S., 591.) The authority of the president to indorse the note, is conceded in cases where the indorsement was made in the legitimate business of the company. I think it may be well maintained here that the indorsement was made in such legitimate business. The company needed money to pay its losses, or otherwise to discharge its liabilities. It cannot be successfully maintained that for such purposes it cannot lawfully borrow money, and if it can do so it can pledge the assets of the corporation for its repayment. To make such pledge effectual a transfer of such assets can be made by its president, and where necessary to a valid transfer, he may indorse notes payable to the order of the company. The principle of this instruction is directly within the doctrine of the *Farmers' and Mechanics' Bank, Kent Co.,* v. *Butchers' and Drovers' Bank* (16 N. Y., 125), and was therefore correct.

The judgment should be affirmed.

All concur in affirming the judgment except MULLIN, J., who was for reversal.

Judgment affirmed.